[Cite as *Mercer v. Goans*, 2021-Ohio-1948.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ROBERT MERCER,                                :

    Plaintiff-Appellant,                  :

                                  No. 109651

    v.                                              :

BRIAN GOANS, ET AL.,                      :

    Defendants-Appellees.              :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 10, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-895116

---

### *Appearances:*

Law Office of Gary A. Benjamin, Inc., and Gary A.
Benjamin, *for appellant.*

Frantz Ward L.L.P., Brian J. Kelly, and Megan E. Bennett,
*for appellees.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Plaintiff-appellant Robert Mercer ("Mercer") appeals the trial court's grant of summary judgment in favor of defendants-appellees Brian Goans ("Goans") and Johnny Chaj ("Chaj") in this civil action. We affirm the trial court's judgment.

## I.    Introduction and Background

{¶ 2}    Mercer was employed with Arconic, Inc. for three years without incident or negative report before his transfer to the position of utility operator in the Large Aerospace Department, First Shift ("area").  As a utility operator, Mercer wielded a degree of authority over several white coworkers.

{¶ 3}    Mercer had been warned by African-American coworkers that the area was part of the plant where "old-fashioned discrimination still existed." Appellant's brief, p. 5.  Mercer alleged he was subjected to harassment and cited examples such as the union representative's display of a voodoo head with dreadlocks labelled "second shift forger" as a racial caricature of an African-American employee who wore dreadlocks.  Mercer asserts that management allowed the head to hang in a common area for a month.

{¶ 4}    On December 30, 2016, Mercer was summoned to a meeting with Human Resources Manager Ross Seibert ("Seibert") and the union representative to address a complaint by white employees who complained about Mercer's methodology for scheduling breaks.  Mercer states that he scheduled breaks the same way that his white counterpart, utility operator Mike Korney ("Korney"),[1] assigned breaks, and Mercer vocalized his dismay with the racially motivated complaints.  An African-American supervisor explained to Mercer how to give breaks that Mercer asserts, was substantially the way that he administered the breaks.  Mercer was not formally disciplined.

---

[1] Korney was a codefendant in the trial court but is not named as an appellee.

{¶5} On March 17, 2017, Mercer witnessed a die weighing several tons crash to the floor putting employees at great risk. Mercer reported the accident to the supervisor and advised that Korney was operating the press. Mercer offers that witnesses agreed the extremely heavy die fell several feet and placed workers at great risk, but the investigators determined that it only fell a few inches and posed little to no threat to others.

{¶6} Due to lack of response by the supervisor, Mercer informed the Arconic safety manager about the accident and Goans reportedly informed coworkers that Mercer told on Korney. Mercer was summoned to a meeting with Seibert on March 24, 2017, and suspended for 30 days without pay for allegedly making threatening gestures and facial expressions at Goans. Goans's accusation was purportedly supported by written statements from Korney and Chaj. In contrast, Mercer states that a white coworker accused of throwing metal tools at another coworker received a two-week suspension and less severe discipline.

{¶7} Mercer was assigned to a different department upon his return to work that has limited his overtime and transfer options. Also upon his return, a white coworker inquired whether Mercer planned to kill all of the white coworkers. Mercer's union grievance was denied. Seibert and Labor Relations Manager Adam Armendariz ("Armendariz") determined that Mercer admitted to the allegations.

{¶8} On April 20, 2018, defendants filed a notice of removal to the federal court. On June 25, 2018, the federal court remanded the case to the trial court, and

the case was returned to the docket for further proceedings.[2] On March 23, 2019, Mercer filed a pro se complaint.

{¶ 9} On July 31, 2018, an amended complaint was filed against Arconic and employees Goans, Korney, Chaj, Seibert, Billy Myers, and Armendariz. The amended complaint contained claims of defamation against the coworkers "in a conspiracy or group action in order to maintain the Large Aerospace Department, First Shift" "as an area of the Arconic Plant that has historically been operated in a racially discriminatory manner against African-Americans."

{¶ 10} Count 1 asserts defamation by coworkers Goans, Korney, and Chaj who allegedly published false statements to management and the union that Mercer threatened them to prevent Mercer from working in the area. Count 2 claims intentional defamation by managers Seibert and Armendariz who alleged that Mercer admitted that he threatened Goans, which Mercer denies.

{¶ 11} Count 3 alleges racial discrimination against all defendants for violating the Ohio Civil Rights Act, R.C. Chapter 4112:

> (1) Arconic maintains the Area as a segregated workplace where African-Americans are unwelcome and have been mistreated for years;
>
> (2) Arconic, Seibert and Myers disciplined Mercer differently than at least one white coworker;
>
> (3) Arconic, Seibert and Myers knowingly allowed a harmful racial atmosphere to exist in the Area;

---

[2] *Mercer v. Goans*, Cuyahoga C.P. No. CV-18-00906 (Apr. 20, 2021).

(4) Goans, Korney and Chaj filed false statements about Mercer with Arconic to have Mercer removed due to race;

(5) Arconic, Seibert and Myers disciplined Mercer differently than Korney though Korney committed a substantially more threatening violation; and

(6) various other ways.

Count 4 cites economic damages, pain and suffering, mental anguish, and lost opportunity costs.

{¶ 12} The defendants admitted that Mercer and the coworker defendants were formerly or currently employed by Arconic but denied discriminatory or disparate treatment. On August 2, 2019, after the close of discovery, the defendants moved for summary judgment on the defamation claims against Goans, Chaj, and Korney and the R.C. Chapter 4112 claim against Arconic, Goans, Korney, Chaj, Seibert, and Armendariz. Mercer opposed the motion and the defendants replied.

{¶ 13} On December 17, 2019, the motion for summary judgment was denied in part and granted in part.

> Defendants Brian Goans, Mike Korney, and Johnny Chaj are entitled to judgment in their favor on the Defamation Claim. Defendants Goans, Korney, and Chaj are entitled to Summary Judgment in regard to Plaintiff's Disparate Treatment and Race Discrimination Claim. The Motion is denied as to the remaining parties.

Journal entry No. 111722706, p.6 (Dec. 18, 2019).

{¶ 14} The trial court determined:

> Plaintiff does not offer sufficient evidence, aside from his own statement, that the information reported to Human Resources regarding Plaintiff's intimidating behavior toward Mr. Goans is false. *See Natl. Medic Servs. Corp. v. E. W. Scripps Co.*, 61 Ohio App. 3d 752, 755, 573 N.E.2d 1148, 1150 (1989), holding that falsity "is an essential

element to a libel action; therefore, a true statement cannot provide the basis for such an action." In the case before this Court, two witnesses Mr. Korney and Mr. Chaj corroborated Mr. Goans' original report of Plaintiff's behavior. Because Plaintiff cannot establish this critical element of his defamation claim, Mr. Goans, Mr. Korney, and Mr. Chaj are entitled to summary judgment on this claim.

Journal entry No. 111722706, p. 5 (Dec. 18, 2019). On February 28, 2020, Mercer filed a motion to dismiss the remaining causes of action and filed the instant appeal.

## II. Assignment of Error

The sole error on appeal is that the trial court's grant of summary judgment for appellees for the defamation claim was in error.

## III. Discussion

{¶ 15} We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Zemcik v. Lapine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 585, 706 N.E.2d 860 (8th Dist.1997).

{¶ 16} "We apply the same standard as the trial court, viewing the facts in the case in a light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party." *Thompson v. Lyndhurst,* 8th Dist. Cuyahoga No. 107695, 2019-Ohio-3277, ¶ 19, citing *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12, 467 N.E.2d 1378 (6th Dist.1983).

{¶ 17} Summary judgment shall not be rendered unless the moving party demonstrates that (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion

for summary judgment is made, with the nonmoving party being entitled to have the evidence construed most strongly in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997).

{¶ 18} Also,

> The party moving for summary judgment bears the burden of demonstrating that no material issues of fact exist for trial. *Dresher v. Burt,* 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). The moving party has the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Id.* After the moving party has satisfied this initial burden, the nonmoving party has a reciprocal duty to set forth specific facts by the means listed in Civ.R. 56(C) showing that there is a genuine issue of material fact. *Id.*

*Flemco, L.L.C. v. 12307 St. Clair, Ltd.*, 8th Dist. Cuyahoga No. 105956, 2018-Ohio-588, ¶ 17.

{¶ 19} "Defamation is a false publication that injures a person's reputation, exposes him to public hatred, contempt, ridicule, shame or disgrace; or affects him adversely in his trade or business." *Kanjuka v. MetroHealth Med. Ctr.*, 151 Ohio App.3d 183, 2002-Ohio-6803, 783 N.E.2d 920, ¶ 15 (8th Dist.). "The essential elements of a defamation action are a false statement, that the false statement was defamatory, that the false defamatory statement was published, the plaintiff was injured and the defendant acted with the required degree of fault." *Id.* "There are two forms of defamation: libel or slander. Generally, slander refers to spoken defamatory words and libel refers to written defamatory words." *Id.*

**{¶ 20}** "Defamation may be per se or per quod." *Id.* at ¶ 16. The trial court explained that appellees were entitled to summary judgment for defamation per se.

> "Defamation per se means that the defamation 'is accomplished by the very words spoken.' Defamation per quod means that a statement with an apparently innocent meaning becomes defamatory through interpretation or innuendo. In order for a statement to be defamatory per se, it must 'consist of words which import an indictable criminal offense involving moral turpitude or infamous punishment, imputes some loathsome or contagious disease which excludes one from society or tends to injure one in his trade or occupation.' With defamation per se, damages and actual malice are presumed. With defamation per quod, the plaintiff must plead and prove special damages resulting from the defamatory statements."

*Id.* at ¶ 16.

**{¶ 21}** Mercer claims defamation per se and declares that the statements by appellees were false. He asserts that the appellees were upset with his report to management that Korney was responsible for letting the die slip and they did not tell the truth about Mercer's alleged behavior that resulted in Mercer's discipline. Goans reported that Mercer engaged in intimidating and threatening behavior toward Goans three times on March 24, 2017.

**{¶ 22}** Goans stated that he was walking into the gate at work and Mercer and another coworker were also arriving. Mercer reportedly told the coworker as Goans walked by, "And this white mother fu**er is the problem." (Tr. 13.) Goans claimed that Mercer declined his offer to "leave work and take care of it outside of work if he wanted to" since they had not yet clocked in. *Id.*

**{¶ 23}** The 6′1″ 225 lbs. Goans reported to his supervisor and union steward that he had "just been threatened" and he did not "feel safe" because Mercer

threatened to beat him up. (Tr. 17.) Goans was concerned that Mercer would approach him in the safe work area, would "get in [Goans's] face" and threaten to "whoop" Goans's "ass" while Goans was "moving material around the plant" that could put "people's safety in jeopardy." (Tr. 17.)

{¶ 24} Goans stated a second incident occurred a short while later that day when Goans was changing "die tooling over in the press * * * [where] [s]ome of the dies are half of the size of this room." *Id.* Reportedly, at "8[00] or 900 degrees [Mercer was] jumping in [Goans's] face, pulling his mask off, telling [Goans] he is going to whoop [Goans's] bitch ass, [and] being very aggressive." *Id.* Mercer was simultaneously shrugging his shoulders.

{¶ 25} Goans cited a third incident that purportedly occurred only minutes later when Goans was changing the tooling on the press using a remote control. Mercer was assisting with the activity, coworker Chaj was present, but Goans did not recall that coworkers Korney, Chaj, Nelson Rosas ("Rosas"), or Anthony Tiberio ("Tiberio") were also present at that time. Goans claimed that Mercer, who was wearing work gloves, pounded his fist into his hand and looked at Goans in an attempt to intimidate him.

{¶ 26} Goans reported the alleged incidents to Seibert and received permission to leave for the day. Goans stated that "after the way I was threatened, [Mercer] jumping and getting in my face out of hand, I had to leave. I could no longer do my job safely." (Tr. 22.) Goans said Chaj and Korney told him after the

third incident but before Goans reported to Seibert that they observed Mercer "getting in my face and threatening me." (Tr. 23.)

{¶ 27} "They asked me, why is he threatening to kick your ass. He was aggressively punching his hand and pulling his mask off and verbalizing, hey, I'm going to whip your white ass." (Tr. 24.) Goans admitted he did not know if they could hear what Mercer said, "because it's a very loud atmosphere in the factory." (Tr. 36.) Goans stated Chaj and Korney "definitely saw" Mercer's actions. Goans also said that he filed a police report though it does not appear from the record that charges were filed.

{¶ 28} When summoned to the office of Seibert, Mercer was informed that he was being suspended for threatening Goans though an investigation had not yet begun. Mercer denied the claims and informed Seibert and the union representative that he wears a full-face respirator at all times on the plant floor. Therefore, he could not have been observed making faces and did not shrug his shoulders or make gestures at Goans. Mercer argued that the schedule for the day demonstrated that the die change reportedly witnessed by Chaj and Korney did not occur at the time reported. Mercer also denied punching his fist into his work gloves to threaten Goans and stated it was common for all of the workers to adjust the work gloves by punching and pulling.

{¶ 29} Mercer further informed them that coworkers Rosas and Tiberio were present and would support his version of events. Rosas and Tiberio stated during

depositions that they did not witness any of the claimed behaviors and that they could not conceive of Mercer behaving in the manner claimed.

{¶ 30} When asked whether they had specific recollections of the events of March 24, 2017, Rosas and Tiberio responded that they did not know or could not recall. Both admitted that they were not in Mercer's presence constantly throughout the day and did not think Mercer was targeted for discipline due to his race.

{¶ 31} After a de novo review of the record viewing the evidence "in a light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party," we do not find that the trial court's grant of summary judgment was in error. *Lyndhurst*, 8th Dist. Cuyahoga No. 107695, 2019-Ohio-3277, at ¶ 19, citing *Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12, 467 N.E.2d 1378. Except for Mercer's own statement of events, Mercer has failed to provide evidence that supports the alleged defamatory statements were false. *MetroHealth Med. Ctr.*, 151 Ohio App.3d 183, 2002-Ohio-6803, 783 N.E.2d 920, at ¶ 15.

{¶ 32} The assigned error is overruled.

## IV. Conclusion

{¶ 33} The trial court's judgment is affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
EILEEN T. GALLAGHER, J., CONCUR