[Cite as *Shury v. Cusato*, 2022-Ohio-4401.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

DONALD SHURY,                          :

    Plaintiff-Appellee,            :

                                No. 111228

    v.                             :

PAUL CUSATO, ET. AL,                   :

    Defendants-Appellants.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
**RELEASED AND JOURNALIZED:** December 8, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas,
Case No. CV-19-918245

---

### *Appearances:*

Susan L. Gragel Law, Inc., and Susan L. Gragel, *for appellee.*

Kehoe & Associate, LLC, Robert D. Kehoe, and Lauren N. Orrico, *for appellants.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Defendants-appellants Paul Cusato ("Cusato") and Growler Restorations, Inc. ("Growler"), appeal the trial court's judgments arising from a civil

action initiated by plaintiff-appellee Donald Shury ("Shury") and appellants' counterclaims.

{¶ 2} We affirm in part, reverse in part, and remand.

## I.    Background and History

{¶ 3} On July 16, 2019, Shury filed a pro se replevin and conversion action for a vintage 1963 Jaguar XKE ("Jaguar") with an asserted value of $150,000 against Cusato and Growler. Cusato, who had more than 40 years of experience restoring British cars and specialized in Jaguars, formed Growler in 2005. Cusato was the sole shareholder and president.

{¶ 4} Shury claimed the vehicle was placed with appellants to correct repair work appellants had previously performed. A vehicle title was attached to the complaint that listed Shury as the owner, the purchase price as $2,500 and the previous owner as A&B Motors in Wickliffe, Ohio ("A&B Motors"). Shury stated appellants refused to return the vehicle due to disputed repair charges of $5,409.98 and storage fees of $1,725.

{¶ 5} On August 9, 2019, the trial court ordered that appellants return the vehicle and required that Shury post a bond of twice the amount of the disputed repair charge. The trial court denied appellants' motions to stay the replevin judgment, and to issue an order preventing sale of the vehicle.

{¶ 6} On August 15, 2019, appellants filed an answer denying Shury's claims. Appellants counterclaimed for 1) a declaratory judgment that appellants had an artisan's lien on the Jaguar and were entitled to possession until payment was

remitted; 2) breach-of-contract for nonpayment; 3) quantum meruit for third-party storage fees beginning May 28, 2019, required because appellants' insurance did not permit storage; 4) defamation, and 5) commercial disparagement. Appellants requested compensatory damages exceeding $25,000 and punitive damages. Shury denied appellants counterclaims and posed several affirmative defenses including violations of R.C. Chapter 1345 known as the Ohio Consumer Sales Practices Act ("CSPA").

{¶ 7} Shury retained counsel and one week after his deposition moved for leave to amend the complaint to add claims under the motor vehicle repair regulations at Ohio Admin.Code 109:4-3-13, promulgated under the CSPA. Shury asserted appellants failed to provide required documents such as an estimate form and receipt for payment made. Appellants countered that the motion was a bad faith attempt to delay the proceedings and did not comply with Civ.R. 15(A). On January 20, 2020, the trial court granted leave.

{¶ 8} On February 5, 2020, appellants filed an amended answer with additional invoices and added a sixth counterclaim for breach of the covenant of good faith and fair dealing. On February 28, 2020, the trial court denied Cusato's motion to dismiss the amended complaint against him individually based on his status as an owner-employee of Growler.

{¶ 9} Appellants moved to compel additional discovery from Shury on the new claims. Appellants argued the written discovery responses lacked substance and Shury stated at the original deposition that his case was based solely on the

replevin action. Shury replied that the requests were untimely, and appellants were on notice due to the CSPA affirmative defense in Shury's original answer to appellants' counterclaims. The trial court denied the motion.

{¶ 10} Appellants subpoenaed the Taft Law Firm and Anthony Nero ("Nero"), the owner of A&B Motors, to clarify what appellants argued was conflicting testimony provided by Shury at deposition. Appellants questioned the true chain of title and claimed value of the vehicle. The trial court denied the motions.

{¶ 11} In April 2020, the parties filed cross-motions for summary judgment. Each parties' filings were accompanied by supporting exhibits. Shury requested summary judgment for the conversion and CSPA motor vehicle repair rules claims, subject to further proceedings for attorney fees and litigation expenses. Shury also moved to deny appellants' counterclaims at appellants' cost. Appellants requested summary judgment against Shury's claims and partial summary judgment against Shury for appellants' declaratory judgment, breach-of-contract and quantum-meruit counterclaims.

{¶ 12} The trial court issued three entries.

> On count one of the amended complaint, there is no question of material fact about whether the defendants committed at least one Ohio CSPA violation.

> On count two of the amended complaint [for conversion], there are issues of material fact about whether the parties had a contract or an equitable substitute for a contract. If they did not, then it is possible the defendants' converted the Jaguar, thereby damaging the plaintiff.

> Those same questions of material fact preclude summary judgment in the defendants' favor on the first three counts of their amended counterclaim.

Journal entry No. 114400360 (Sept. 9, 2020).

{¶ 13} Secondly, the trial court granted Shury's summary judgment motion in part. The trial court found "no genuine issue of material fact existed regarding whether appellants 'committed a deceptive trade practice and violated R.C. 1345.02(A) when, in late 2018 or early 2019, they failed to meet their obligation to provide to Shury the form required by Ohio Administrative Code 109:4-3-13(A)(1).'" Journal entry No. 114398315 (Sept. 9, 2020).

> There are, however, issues of material fact about how many times a deceptive trade practice was committed. Shury claims a deceptive trade practice [occurred] each time an invoice was produced and when a $1,000 deposit was demanded by the defendants and paid by Shury. The summary judgment, therefore, is on one instance of a 1345.02(A) violation only. The summary judgment, moreover, is only on the existence of the violation itself; there are still issues of fact about the amount of damages caused by the violation.

> Summary judgment was not sought on count two of the amended complaint for conversion and that claim remains pending.

> The portion of the April 17, 2020, motion seeking summary judgment in Shury's favor on Cusato and Growler Restorations' counterclaims [is] addressed in a separate judgment entry.

*Id.*[1]

---

[1] The trial court incorrectly stated that Shury did not seek summary judgment on the conversion claim, but the parties and the trial court addressed the issue as documented in the first judgment entry. The claim was ultimately dismissed.

{¶ 14} In the third entry, the trial court granted Shury's motion for summary judgment on appellants' counterclaim for breach of the duty of good faith and fair dealing.

> There is no stand-alone cause of action for any such breach. Evidence to the effect that duty was breached may, however, be considered in connection with the breach of contract counterclaim (Count Two).

> Otherwise, the motion for summary judgment on the counterclaims is denied.

Journal entry No. 114399772 (Sept. 9, 2020).

**A. Trial**

{¶ 15} The jury trial commenced on November 16, 2021. The case was reassigned to a visiting judge the day prior to trial due to a scheduling conflict. Shury, Cusato, John Barnard ("Barnard"), owner of Euro Motorsports ("Euro"), and Terry Hawk ("Hawk"), owner of Hawk Engine & Machine, Inc. ("Hawk Engine") testified.

{¶ 16} Shury met Cusato in 2007 and had appellants repair and restore several vehicles for him. In 2011, Shury purchased several vintage Jaguars, including the Jaguar, from an estate administered by the Taft Law Firm ("Taft Law"). The vehicles required repairs and had missing or out-of-state titles. Shury had appellants repair several of the vehicles.

{¶ 17} In 2014, Shury hired appellants to resolve an issue with blue smoke emanating from the Jaguar's tail pipe. Shury had appellants remove the engine cylinder head that Shury then delivered to Hawk Engine to machine and rebuild.

After the cylinder head was removed, appellants discovered that portions of a prior rebuild had been improperly performed. Shury executed the motor-vehicle repair-disclosure form that waived receipt of an estimate and authorized minimal repairs because he planned to sell the vehicle. Appellants reinstalled the cylinder head. Shury paid appellants $1,000.00 on a $1,673.35 invoice.

{¶ 18} Cusato told Shury the car would stop smoking after it was driven for a break-in period of several hundred miles. From 2014 to 2018, appellants and Shury continued to do business without issue. In 2018, after the Jaguar was driven only 150 miles, Shury was unable to sell the Jaguar at a Sotheby's auction.

{¶ 19} In December 2018, Shury returned the Jaguar to appellants with instructions to "[t]ake the engine out, disassemble it and send it to Hawk." (Tr. 330.) Shury delivered the engine to Hawk Engine and returned it to appellants on February 12, 2019. The unit was returned to Hawk Engine three times for additional work and adjustments so it could be properly reinstalled.

{¶ 20} Appellants incurred additional costs due to the issues, and Cusato testified about the charges in appellants' invoices and how they related to the events. Appellants reinstalled the engine and the car was running at a normal temperature and fans were operating when a "substantial puddle of oil" was discovered underneath the car. The rear main seal was leaking, an issue that could only be discovered after the engine had been reassembled and the vehicle was running.

{¶ 21} Cusato called Shury in May 2019 to inform him the car was ready. Shury disputed the accuracy of the invoices and refused to pay. On June 20, 2019,

Shury texted Cusato advising that he wanted to pick up the car and appellants could pursue payment however they determined. Cusato replied that he would meet with him and bring the paperwork to discuss the matter but Shury did not respond. On July 11, 2019, appellants sent a payment demand letter that explained the basis for the charges, including storage fees. Shury testified "it was past the point of meeting with him" by that time. (Tr. 190.) "There was so much venom going over this that there was no need to meet with him." *Id.* The replevin action was filed and Shury secured possession.

{¶ 22} Cusato testified that he believed the 2014 repair-estimate waiver form extended to the 2018 repairs. Shury listed in the replevin action that the repairs were to correct work performed, and Shury testified at trial that he wanted a credit issued against the 2018 work due to the "defective" portion of the work appellants did in 2014. (Tr. 37, 156.)

{¶ 23} Barnard repaired and sold foreign cars for over 25 years. Barnard testified that he had worked on the Jaguar "probably about three years ago," which would have been about 2018. (Tr. 230.) The Jaguar arrived on a flatbed leaking coolant. Barnard discovered several coolant leaks in the manifold and made repairs.

{¶ 24} About six months prior to that, Barnard examined the Jaguar for an oil leak in the real main seal contained within the short block of the engine. (Tr. 238.) Barnard told Shury the entire engine had to be removed to get to the main seal and that he would "better off taking it back to the last person that worked on it" than

have Barnard fix it and estimated it would take about 40 hours of work. Shury did not sign an estimate form on those occasions.

{¶ 25} Hawk testified he had worked with appellants and with Shury over the years. Hawk described the company's involvement with the 2014 and 2018 Jaguar repairs. Shury supplied the parts and paid Hawk Engine directly. Hawk performed some of the work and had certain stages performed by third-parties who specialized in the applicable function. Hawk confirmed that "the only way you can tell if a rear main seal is going to leak" is to completely assemble the engine "and run it." (Tr. 430.)

{¶ 26} Shury also testified that he told appellants' landlord that he had a dispute with appellants who did "substandard work, billed excessively, had an unsafe facility and that appellants' employees were mere apprentices." (Tr. 207.) Shury did not recall telling Barnard that Cusato was a thief or stating it during his deposition. Shury also did not recall or otherwise disputed allegedly defamatory statements made during deposition.

## B. Verdict

{¶ 27} The jury determined:

> [V]erdict for defendants and against plaintiff on Count I of the complaint [CSPA claim]; verdict for defendants and against plaintiff in the amount of $6,462.98 on Count II of the counterclaim [breach of contract for repair charge]; verdict for defendants and against plaintiff in the amount of $2,250.00 on Count III of the counterclaim [quantum meruit]; and verdict for plaintiff and against defendants on Counts IV [defamation] and V [commercial disparagement] of the counterclaim. Count II of complaint [conversion] and all other claims of the counterclaim were and are dismissed. Defendants as prevailing party on the CSPA claims of Count I of the complaint seek attorney fees and

expenses. At the agreement of the parties, trial on this claim of defendants is set for 1:30 p.m. on Wednesday, December 8, 2021. Courtroom to be announced. This is not a final judgment; the two (2) replevin bonds posted in this court on August 8, 2019 and August 14, 2019, by plaintiff in favor of defendants remain in force until further order of court.

Journal entry No. 119796381 (Dec. 1, 2021).

{¶ 28} Appellants' motion for judgment notwithstanding the verdict ("JNOV") on the claims for defamation and commercial disparagement was denied. At the attorney fees hearing, defense counsel testified regarding the fees incurred and that there was an overlap between work required for the CSPA claim and the breach-of-contract and defamation claims. The trial court denied attorney fees.

{¶ 29} Appellants appealed.

## II. Assignments of Error

I. The trial court erred in denying appellants' motion for judgment notwithstanding the verdict.

II. The trial court erred in denying appellants' motion for attorney fees.

III. The trial court erred in granting appellee's motion for leave to file an amended complaint.

IV. The trial court erred in denying appellants' motion to compel discovery from appellee.

V. The trial court erred in denying appellants' motion to compel discovery from the Taft Law Firm.

VI. The trial court erred in excluding the testimony of Anthony Nero.

## III. Discussion

### A. Judgment Notwithstanding the Verdict

{¶ 30} The standard for reviewing a Civ.R. 50(B) motion for judgment notwithstanding the verdict and a Civ.R. 50(A) motion for a directed verdict are the same. *Posin v. A. B. C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 344 N.E.2d 334 (1976). Both motions test the sufficiency of the evidence as a matter of law, and we review questions of law de novo. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 35.

{¶ 31} Also,

> The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions.

(Citations omitted.) *Posin* at 275, citing Civ.R. 50(A) and (B).

{¶ 32} The role of an appellate court in reviewing a JNOV decision is not to "weigh the evidence or evaluate the credibility of witnesses" but to "determine whether there is 'sufficient material evidence presented at trial on this issue to create a factual question for the jury.'" *Torres v. Concrete Designs, Inc.*, 2019-Ohio-1342, 134 N.E.3d 903, ¶ 74 (8th Dist.), quoting *Malone v. Courtyard by Marriott Ltd. Partnership*, 74 Ohio St.3d 440, 445, 659 N.E.2d 1242 (1996). In addition, "'[a]bsent a reason to do otherwise, we presume regularity in the jury's verdict.'" *Id.*,

quoting *Harris v. Univ. Hosps. of Cleveland*, 8th Dist. Cuyahoga Nos. 76724 and 76785, 2002 Ohio App. LEXIS 1032 (Mar. 7, 2002).

{¶ 33} Appellants maintain they are entitled to judgment on their counterclaims for defamation and commercial disparagement. "Defamation is a false publication that injures a person's reputation, exposes him to public hatred, contempt, ridicule, shame or disgrace; or affects him adversely in his trade or business." *Mercer v. Goans*, 8th Dist. Cuyahoga No. 109651, 2021-Ohio-1948, ¶ 19 "The essential elements of a defamation action are a false statement, that * * * was defamatory, * * * was published, the plaintiff was injured and the defendant acted with the required degree of fault." *Id.* "There are two forms of defamation: libel or slander. Generally, slander refers to spoken defamatory words and libel refers to written defamatory words." *Id.*

{¶ 34} "Defamation is either per se or per quod." *Montgomery v. Greater Cleveland Regional Transit Auth.*, 8th Dist. Cuyahoga No. 109559, 2021-Ohio-1198, ¶ 29. Appellants claimed defamation per se which "occurs when the defamation is manifested by the very words spoken." *Id.* "Where the statement constitutes defamation per se, damages and actual malice are presumed." *Id.* However, "the presumptions are rebuttable." *Concrete Creations & Landscape Design L.L.C. v. Wilkinson*, 7th Dist. Carroll No. 20 CA 0946, 2021-Ohio-2508, ¶ 28, citing *Sayavich v. Creatore*, 7th Dist. Mahoning No. 07-MA 217, 2009-Ohio-5270, ¶ 93-94.

{¶ 35} Actual malice must be demonstrated by clear and convincing evidence that the defendant published the statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Jacobs v. Frank*, 60 Ohio St.3d 111, 573 N.E.2d 609, fn. 25 (1991).

{¶ 36} The trial court explained to the jury that the legal principles underlying individual defamation and commercial defamation are the same, and recited the six statements that appellants cited as defamatory:

> Cusato and Growler's employees are unqualified, incompetent, did substandard work and cannot be trusted, that's one;
>
> Number 2, Growler's facility is dirty, unsafe, and its business is not run in a professional manner;
>
> Now on to 3, defendants engage in fraud;
>
> Number 4, Cusato is a thief;
>
> [Number] 5, Cusato is a liar;
>
> And [number] 6, defendants charge excessive time for work performed.

(Tr. 469-470.)

{¶ 37} Appellants argue the evidence is clear and convincing that Shury acted with actual malice. "Shury admitted he had no evidence his statements were true and took no steps to verify them." Appellants reply brief, p. 2. Shury also stated that he was voicing his opinion. (Tr. 207.) "[T]he 'opinion privilege' which "recognizes opinions are 'nonactionable expressions' of a defendant's personal judgment." *Wilkinson*, 7th Dist. Carroll No. 20 CA 0946, 2021-Ohio-2508, ¶ 30, quoting *Wampler v. Higgins*, 93 Ohio St.3d 111, 127, 132, 2001-Ohio-1293, 752 N.E.2d 962.

{¶ 38} Shury testified that he did not accept Cusato's invitation to meet and discuss the invoices because "[i]t was past the point of meeting with him. There was so much venom going over this that there was no need to meet with him." (Tr. 190.) Appellants argue that Shury's use of the word "venom" is proof of actual malice.

{¶ 39} The trial court instructed the jury that it must find for each statement:

> by the greater weight of the evidence, the plaintiff made the alleged statement; the statement was about the defendant or defendants; the statement was false; and the statement was published to one or more persons other than the defendant. * * * Published is the legal term for the statement being heard and understood by a person other than the defendants.

(Tr. 470.)

{¶ 40} The trial court also instructed, "you must also find, by clear and convincing evidence that the plaintiff in making the statement acted with actual malice" * * * "It means the evidence must produce in the mind a firm belief or conviction about the facts to be proved." (Tr. 471.) "Actual malice occurs when the plaintiff makes a false statement either with knowledge that it is false, or with reckless disregard of whether it is false or not." (Tr. 472.) "Reckless disregard means the plaintiff acted while actually aware of the probable falsity of the statement, or * * * entertained serious doubts as to the truth of the statement." *Id.*

{¶ 41} "The plaintiff's failure to investigate may be considered evidence" "of reckless[ly] disregarding to the statement's truth or falsity, but only if you find from the facts and circumstances that the plaintiff had serious doubts about the truth of the statement." *Id.* The trial court also instructed

[t]he plaintiff's words must be given their natural and ordinary meaning, taking into consideration the circumstances in which the statement was made. You must ignore any minor ways in which the statement is false. In deciding whether the statement is false you may not consider the plaintiff's belief as to the truth of the statement.

(Tr. 474.)

{¶ 42} After the verdict, the jury's interrogatory responses were read for the record. The jury found that Shury's statements were defamatory, false, and published. However, the jury did not find "by clear and convincing evidence, that the plaintiff acted with actual malice." (Tr. 550.)

{¶ 43} Our review of the record supports the trial court's findings regarding the facts and evidence, and that the appropriate legal standard was applied:

> The jury answered the interrogatories requested by defendants and their answers were consistent and logical; they clearly established that the jury did not find plaintiff Shury acted with actual malice when he made the defamatory and disparaging statements about defendants. The parties approved the definition of actual malice given the jury in written instruction. The jury did not indicate any difficulty understanding or applying the concept during deliberation. The jury had the opportunity to evaluate Shury's demeanor and testimony on the witness stand and that of defendant Cusato when he testified as well as the surrounding evidence. The parties had had prior business dealings; there was an apparent difference in their ages; both had been extensively involved in automotive matters for many years. Where reasonable minds could reach different conclusions about the evidence, request for a judgment notwithstanding the verdict must be denied.

Journal entry No. 120396330, p. 1 (Dec. 31, 2021).

{¶ 44} This court finds that there was sufficient evidence for the jury to decide that Shury did not act with actual malice. *Torres*, 2019-Ohio-1342, 134 N.E.3d 903,

¶ 74 (8th Dist.). We find no reason to rebut the presumption of regularity in the jury's verdict. *Id.* at ¶ 73. The first assigned error lacks merit.

### B. Attorney Fees

{¶ 45} Appellants second challenge is to the trial court's failure to award attorney fees under the CSPA where the evidence demonstrated that Shury brought and maintained a groundless action in bad faith. We find that the claim has merit.

{¶ 46} The standard of review on the award of attorney fees is abuse of discretion. *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29, 548 N.E.2d 933 (1990). When a court exercises its judgment in an unwarranted way over a matter upon which it has discretionary authority, the court has abused its discretion. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. "'The concept of 'abuse of discretion' as the basis for determining 'error' of the trial court connotes the right to exercise a sound discretion.'" *Id.* at ¶ 37, quoting *Rohde v. Farmer*, 23 Ohio St.2d 82, 262 N.E.2d 685 (1970).

{¶ 47} Conversely, "courts lack the discretion to make errors of law, particularly when the trial court's decisions goes against the plain language of a statute or rule." *Id.* at ¶ 39. For this reason, an appellate court applies a de novo "standard of review when reviewing issues of law." *Id.* at ¶ 38, citing *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 345, ¶ 26 (2d Dist.); *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 30.

{¶ 48} This court has also held that "[a] trial court also abuses its discretion when 'the amount of fees determined is so high or so low as to shock the

conscience.'" *Alcorso v. Correll*, 8th Dist. Cuyahoga No. 110218, 2021-Ohio-3351, ¶ 43, quoting *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146, 569 N.E.2d 464 (1991). Appellants moved for attorney fees and expenses under the CSPA. The trial court advised that appellants were required to prove that the fees and expenses were reasonable and related to work reasonably performed, and that Shury brought or maintained a groundless CSPA action or prosecuted it in bad faith under R.C. 1345.09(F).

{¶ 49} R.C. 1345.09(F) provides:

(F) The court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed and limited pursuant to section 1345.092 of the Revised Code, if either of the following apply:

(1) The consumer complaining of the act or practice that violated this chapter has brought or maintained an action that is groundless, and the consumer filed or maintained the action in bad faith;

(2) The supplier has knowingly committed an act or practice that violates this chapter.

Thus, R.C. 1345.09(F)(1) allows a supplier to recover attorney fees from a consumer that files and maintained a groundless action and maintains that action in bad faith. R.C. 1345.09(F)(2) allows the successful consumer to recover attorney fees from the supplier who knowingly violates the chapter.

## C. Groundless Action in Bad Faith

{¶ 50} The term "groundless" under R.C. 1345.09(F)(1) has been defined as "'lacking a basis or a rationale.'" *Semco, Inc. v. Sims Bros., Inc.*, 3d Dist. Marion No. 9-12-62, 2013-Ohio-4109, ¶ 42, quoting *Black's Law Dictionary* 772 (9th Ed.2009). "Black's Law Dictionary defines "'bad faith'" as "'[d]ishonesty of belief or

purpose.'" *Id.* at ¶ 45, quoting *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 127 Ohio St.3d 202, 2010 Ohio 5073, ¶ 8, 937 N.E.2d 1274.

{¶ 51} The trial court found

> it difficult to conclude Shury's O[hio]CSPA claims were groundless because Shury brought forward admissible evidence to establish them at trial and survived a directed verdict motion on that evidence. The Court finds it difficult to conclude Shury's O[hio]CSPA claims were prosecuted in bad faith. True, these claims might not have been brought absent Defendants' commencement of their breach of contract and defamation claims but litigation does encourage a party on the defensive to bring any claims he has in an effort to somewhat level the playing field. In addition, Ohio law requires a party in Shury's position to bring any mandatory claims he has against Defendants (which the O[hio]CSPA claims would be) when Defendants bring their claims against him. Had Shury developed no evidence in support of the claims, he would be required to dismiss the claims or risk sanctions for maintaining the action without grounds or in bad faith. Here however Shury had some evidence to support his O[hio]CSPA allegations and survived a directed verdict. The fact that if proven they would have returned modest compensation does not make them groundless or made in bad faith.

Journal entry No. 120396330, p. 2 (Dec. 31, 2021.)[2]

{¶ 52} Appellants offer that the trial court's determination that there was no evidence of bad faith because Shury survived a directed verdict is incorrect. Appellants sole challenge in the motion for a directed verdict was to the claims relating to the May invoices and that challenge was upheld in toto. The record supports appellants' position.

---

[2] The trial court addressed the prior summary judgment finding that Shury was entitled to at least one CSPA claim and explained the finding was the source of confusion since there were clearly issues of fact. Thus, the trial court determined, "[w]e cannot read that holding * * * as a holding that this was a consumer transaction and there was at least one violation * * * so I am treating that as if it is a nullity for our proceedings. (Tr. 388-389.) Shury objected but the issue is not presented for cross-appeal.

{¶ 53} Shury contended that seven CSPA violations occurred. As defense counsel stated, "[T]here is a list of A through G specific violations." (Tr. 391.) Counsel specified that appellants challenge was only to the C through G violations regarding the May invoices. "I think there has been no testimony that * * * [the] violations alleged in C through G occurred." (Tr. 396.) This is confirmed by the trial court's earlier statement that "[w]e have been off the record discussing whether the violations identified as C through G in the plaintiff's list * * * are, per se, violations." (Tr. 393.)

{¶ 54} The trial court agreed with appellants:

I think the only violations that the defendant can come up with that are per se, is the failure to give the receipt and the failure to provide the — do the work without the written — here it is — the written estimate. I think * * * those are the only two, per se, violations.

* * *

I know that yesterday the defendants said they had no directed verdict motion, but today they made a directed verdict motion targeted with those items. And I think that is correct so hence my ruling.

(Tr. 403-404.)

{¶ 55} It is also significant that the jury did not find appellants liable for the remaining two CSPA claims. According to the jury's interrogatory responses, the dealings were consumer transactions and appellants did not fail to provide the estimate form or a receipt for the $1,000 deposit. The finding was unanimous that judgment was entered "against the plaintiff and for the defendant[s] on the Consumer Sales Practices Act." (Tr. 547-548.)

{¶ 56} In appellants post-hearing brief, they summarized the trial evidence that demonstrated bad faith and groundlessness. Appellants cited the history of dealings between the parties, the individual expertise of the parties, and the fact that both parties testified, as supported by the replevin complaint, that the 2018 work was a continuation of the 2014 work for which the proper disclosure was made. Appellants also stated that Shury was presented with a $1,000 invoice immediately prior to the issuance of a $1,000 check for the work listed which shows that the payment was not a deposit.

{¶ 57} The trial court also stated that Shury was required to bring the CSPA claims in response to appellants' counterclaims. Except for the breach of good faith and fair-dealing counterclaim added in response to Shury's amended complaint, appellants' counterclaims were advanced with their original answer. Shury, represented by counsel, included a CSPA affirmative defense but not a claim.

{¶ 58} Appellants attempted to address the issue at Shury's deposition who testified that he was standing on the replevin action. The claim was added one week after the deposition and after the Cusato deposition. Counsel for appellants testified that no new evidence emerged to support the added claim. Appellants also cited Shury's alleged statements to appellants and counsel that he would use the CSPA to increase appellants costs.

{¶ 59} Based on this court's review of the record, we find that the trial court's decision that the claims were not groundless or made in bad faith due to Shury's

ability to survive a directed verdict on issues that were not presented for adjudication constitutes an abuse of discretion.

### D. Fee Amount

{¶ 60} This court further finds that the trial court's holding that appellants were not entitled to any amount of attorney fees also constitutes an abuse of discretion.

{¶ 61} The trial court stated that appellants were required to prove that the fees and expenses were reasonable and related to work reasonably performed. "'With regard to the reasonableness of the fee award, the Ohio Supreme Court has set forth a two-part process a trial court is to follow when determining the amount of fees to award the prevailing party.'" *Semco, Inc.*, 3d Dist. Marion No. 9-12-62, 2013-Ohio-4109, ¶ 51, quoting *Mike Castrucci Ford Sales, Inc. v. Hoover*, 12th Dist. Clermont No. CA2009-03-016, 2009-Ohio-4823, ¶ 14, citing *Bittner*, 58 Ohio St.3d 143, 145, 569 N.E.2d 464 (1991). Though very few cases involve R.C. 1345.09(F) (1), courts apply the *Bittner* fee calculation formula to both subsections of R.C. 1345.09(F). *See id.*

{¶ 62} The Ohio Supreme Court set forth the attorney fee calculation formula:

> When awarding reasonable attorney fees pursuant to R.C. 345.09(F)(2), the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may modify that calculation by application of the factors listed in DR 2-106(B). These factors are: the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship;

the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent. All factors may not be applicable in all cases and the trial court has the discretion to determine which factors apply, and in what manner that application will affect the initial calculation.

*Bittner*, 58 Ohio St.3d 143, 146, 569 N.E.2d 464. "Prof.Cond.R. 1.5(a) superseded former DR 2-106, but the two rules are substantially the same." *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, 160 Ohio St.3d 32, 2020-Ohio-1056, 153 N.E.3d 30, ¶ 12.[3] "When making a fee award pursuant to R.C. 1345.09(F)(2), the trial court must state the basis for the fee determination. Absent such a statement, it is not possible for an appellate court to conduct a meaningful review." *Bittner* at 146.

{¶ 63} The trial court declined to award fees and expenses based on the fee bills presented and appellants' counsel's testimony because the fees and expenses were not "allocated between [the] defense of Shury's O[hio]CSPA claim and the prosecution of [appellants'] contract and defamation claim." Journal entry No. 120396330, p. 2 (Dec. 31, 2021). Appellants' counsel testified that the issues were effectively inextricably intertwined.

---

[3] In *Phoenix*, the court determined that the "lodestar" estimate establishes a reasonable fee and the factors set forth in Prof.Cond.R. 1.5(a) are generally "included as part of the hourly fee used to calculate the lodestar." *Id.* at ¶ 16, citing *Bittner*, 58 Ohio St.3d at 145, 569 N.E.2d 464, and *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40. The court determined "[t]here is a strong presumption that the reasonable hourly rate multiplied by the number of hours worked, which is sometimes referred to as the 'lodestar,' is the proper amount for an attorney-fee award. Enhancements to the lodestar should be granted rarely and are appropriate when an attorney produces objective and specific evidence that an enhancement of the lodestar is necessary to account for a factor not already subsumed in the lodestar calculation." *Id.* at ¶ 19, citing *Perdue v. Kenny A.*, 559 U.S. 542, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010).

{¶ 64} Counsel testified that charges relating to the CSPA claims occurred prior to the amended complaint based on Shury's statement to Cusato, after the replevin hearing, that if the litigation continued appellants would be paying treble damages. Fee bills covered work conducted from June 20, 2019, to December 31, 2019, 2020, and 2021.

{¶ 65} Pursuant to counsel's testimony and as summarized in appellants' post-hearing brief, the CSPA claim overlapped with the work required to prosecute the counterclaims. For example, the evidence used to defend the CSPA claim inextricably supported the breach-of-contract counterclaim.

{¶ 66} Counsel testified:

> [I]t is impossible to segregate the amount of time committed to the CSPA claim versus the defamation commercial disparagement. So for example, if there's a charge for the summary judgment it's regarding drafting a brief in opposition, something like that, there's no breakout of how much time was committed to one claim versus the other.
>
> * * *
>
> [For 2021] [t]he major events are the mediation process, preparation for the trial and a five-day trial.

(Tr. 577-578.)

{¶ 67} The trial court determined:

> Defendants' failure to allocate their fees in this situation deprives the Court of any means to determine the extent of fees related to OCSPA claims and of any means to gauge the reasonableness of such fees. The Court finds it was not impossible to allocate the legal billing items between the categories and concludes it is unreasonable to award Defendants' entire legal bill when their entitlement to fees and expenses is limited to one out of three main claims or defenses which the litigation involved. For this reason, the Court finds the facts do not

justify following *Bryant v. Walt Sweeney Automotive*, [1st Dist. Hamilton Appeal Nos. C-010395, C-010404,] 2002 Ohio 2577 (1st Dist.) and *Edlong Corp. v. Nadathur*, [1st Dist. Hamilton No. C-120369,] 2013-Ohio-1283, reasonable and practical as their holdings are [applicable] if the facts justify them. The facts do not do so here.

Journal entry No. 120396330, p. 2 (Dec. 31, 2021).

{¶ 68} As appellants emphasize, the trial court stated that

[i]t seems plausible that some legal work would overlap between the two categories of legal work and that it might be difficult to allocate each of the bills line items with precision. Even considering these practical difficulties however, allocation was possible.

*Id.*

{¶ 69} The cases cited by the trial court relied on *Bittner*, 58 Ohio St.3d 143, 569 N.E.2d 464. The *Bryant* court "held that when it is not possible to divide claims in this fashion, such as when claims not covered under the CSPA involve a common core of facts with claims arising under the CSPA, then the court may award attorney fees for all time reasonably spent pursuing all claims." *Bryant*, 1st Dist. Hamilton No. C-010395 and C-010404, 2002-Ohio-2577, at ¶ 35.

{¶ 70} The court in *Edlong Corp. v. Nadathur*, 1st Dist. Hamilton No. C-120369, 2013-Ohio-1283, which followed *Bryant*, added that

the inability of a prevailing party to allocate attorney fees for discrete claims does not necessarily render a fee award for the full amount unreasonable. *See Miller v. Grimsley*, 197 Ohio App.3d 167, 2011-Ohio- 6049, 966 N.E.2d 932, ¶ 17 (10th Dist.). So a trial court abuses its discretion to award attorney fees if it arbitrarily excises a portion of attorney fees in the face of uncontroverted evidence that the attorney fees are indivisible because the claims involved were so intrinsically intertwined. *Id*.

*Id* at ¶ 17.

**{¶ 71}** This court has similarly held that "fees may be awarded for claims related to the violation of the Consumer Sales Practices Act, when they are not easily separated." *Gonzalez v. Spofford*, 8th Dist. Cuyahoga No. 85231, 2005-Ohio-3415, ¶ 39, citing *Fit 'N' Fun Pools, Inc. v. Shelly*, 9th Dist. Wayne No. 99CA0048, 2001 Ohio App. LEXIS 3 (Jan. 3, 2001); *Bryant*, 1st Dist. Hamilton Nos. C-010395 and C-010404, 2002-Ohio-2577; *Parker v. I&F Insulation Co.*, 1st Dist. Hamilton No. C-960602, 1998 Ohio App. LEXIS 1187 (Mar. 27, 1998); B*udner v. Lake Erie Homes*, 11 Dist. Portage No. 2000-P-0108, 2001-Ohio-4288; *Luft v. Perry Cty. Lumber & Supply Co.*, 10th Dist. Franklin No. 02AP-559, 2003-Ohio-2305.

**{¶ 72}** This court finds that, under the circumstances of this case, the failure to award any attorney fees shocks the conscience and as a result constitutes an abuse of discretion. *Bittner*, 58 Ohio St.3d at 146, 569 N.E.2d 464.

**{¶ 73}** The second assignment of error is sustained.

### E. Leave to File Amended Complaint

**{¶ 74}** Appellants also claim that the trial court's grant of Shury's motion for leave to file an amended complaint was in error. Shury's motion was filed pursuant to Civ.R. 15(A):

> (A) Amendments. A party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-eight days after service of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires. Unless the court orders otherwise, any required response to an amended pleading must be made within the

time remaining to respond to the original pleading or within fourteen days after service of the amended pleading, whichever is later.

*Id.*

{¶ 75} This court reviews a trial court's decision to grant or deny a motion for leave to file an amended pleading for an abuse of discretion. *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 122, 573 N.E.2d 622 (1991). When a court exercises its judgment in an unwarranted way over a matter upon which it has discretionary authority, the court has abused its discretion. *Johnson*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, at ¶ 35. "The concept of 'abuse of discretion' as the basis for determining 'error' of the trial court connotes the right to exercise a sound discretion." *Id*. at ¶ 37.

{¶ 76} A Civ.R. 15(A) motion for leave to amend a pleading "should be refused if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party." *Turner v. Cent. Local School Dist.*, 85 Ohio St.3d 95, 99, 706 N.E.2d 1261 (1999), citing *Hoover v. Sumlin*, 12 Ohio St.3d 1, 465 N.E.2d 377 (1984), paragraph two of the syllabus.

{¶ 77} We do not find that to be the case. Shury originally filed pro se and subsequently secured the assistance of counsel who filed the motion for leave. The amendment identified the corporate status of Growler and distinguished which claims were against which appellant. Appellants prevailed on the CSPA claims and this court has determined that the failure to award attorney fees was in error, and that the trial court did not abuse its discretion in denying the JNOV for defamation

and commercial disparagement. Ownership of the Jaguar was not a prerequisite to any of the claims. *Jones v. All Tune Lube*, 8th Dist. Cuyahoga No. 96674, 2011-Ohio-6432, fn. 2, citing *Bridge v. Midas Auto Experts,* 8th Dist. Cuyahoga No. 94115, 2010-ohio-4681, ¶ 10. The record does not support that appellants were prejudiced by the amendment or that the trial court abused its discretion. The third error lacks merit.

## F. Denial of Motions to Compel

{¶ 78} For the fourth and fifth errors, appellants complain that the trial court's refusal to compel Shury to submit to a second deposition and to require the Taft Law Firm to respond to discovery was in error.

{¶ 79} An appellate court reviews the denial of a motion to compel discovery for an abuse of discretion. *State ex rel. V. Cos. v. Marshall*, 81 Ohio St.3d 467, 469, 692 N.E.2d 198 (1998). When a court exercises its judgment in an unwarranted way over a matter upon which it has discretionary authority, the court has abused its discretion. *Johnson*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, at ¶ 35. "The concept of 'abuse of discretion' as the basis for determining 'error' of the trial court connotes the right to exercise a sound discretion." *Id*. at ¶ 37.

### 1. Shury

{¶ 80} Appellants requested that Shury appear for a supplemental deposition to address the grounds for the CSPA claim and ownership of the Jaguar. Appellants argued that the refusal caused appellants to incur substantial attorney fees to defend against the CSPA claims and to demonstrate that Shury acted in bad faith.

**{¶ 81}** We reiterate that a plaintiff is not required to prove ownership of a motor vehicle to proceed with claims under the CSPA motor vehicle repair rules. *All Tune Lube*, 8th Dist. Cuyahoga No. 96674, 2011-Ohio-6432, fn. 2, citing *Midas Auto Experts*, 8th Dist. Cuyahoga No. 94115, 2010-0hio-4681, ¶ 10. Appellants prevailed on the CSPA claims and this court has determined that the failure to award attorney fees was in error.

**{¶ 82}** We do not find that the trial court abused its discretion.

### 2. Taft Firm

**{¶ 83}** Appellants subpoenaed documents relating to Shury's acquisition of the vehicle. Appellants argued that the evidence would demonstrate validity of title, the lack of a consumer transaction, and the claim was brought in bad faith.

**{¶ 84}** The Taft Firm defended that they cannot be forced to search a client's file that was closed more than five years earlier and that they were ethically prohibited from producing the documents by the Code of Professional Conduct, and that appellants could have pursued consent from the estate executor or the probate court. The trial court quashed the motion pursuant to Civ.R. 45(C)(3)(d).

**{¶ 85}** Appellants prevailed on the CSPA action and counterclaims except for defamation and commercial disparagement. The vehicle has since been sold. We do not find that the trial court abused its discretion.

**{¶ 86}** The fourth and fifth assigned errors are overruled.

### G. Witness Exclusion

{¶ 87} The sixth and final assigned error is the trial court's exclusion of testimony from the owner of AB Motors. Appellants sought to call Nero to show the lack of a consumer transaction, bad faith, and invalid price listed on the title. They alleged the information would go to Shury's "credibility, propensity for truthfulness, and whether he was acting with a dishonest purpose, moral obliquity, and conscious wrongdoing, all important factors in the appellants' claim for attorneys' fees." Appellants' brief, p. 40. Without detail, the trial court excluded Nero's testimony under Evid.R. 404(B).

{¶ 88} Evid.R. 404(A) is a general prohibition on using evidence of a person's character to prove he or she acted "'in conformity therewith on a particular occasion.'" *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 71. Evid.R. 404(B) "provides that '[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.'" *Allen v. Allen*, 11th Dist. Geauga No. 2021-G-0023, 2022-Ohio-3198, ¶ 42, quoting Evid.R. 404(B). "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id*.

{¶ 89} Further,

> To be admissible, (1) the evidence must be relevant, Evid.R. 401, (2) the evidence cannot be presented to prove a person's character to show conduct in conformity therewith but must instead be presented for a legitimate other purpose, Evid.R. 404(B), and (3) the probative value of the evidence cannot be substantially outweighed by the danger of

unfair prejudice, Evid.R. 403. *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 72.

*Allen* at ¶ 44.

{¶ 90} Finally, "'[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, * * * may not be proved by extrinsic evidence.'" *Lambert v. Wilkinson*, 11th Dist. Ashtabula No. 2007-A-0032, 2008-Ohio-2915, ¶ 98, quoting Evid.R. 608(B).

{¶ 91} Once again, ownership was not a prerequisite for the CSPA claims upon which appellants prevailed. Coupled with our findings herein, we do not find that the trial court abused its discretion.

{¶ 92} The sixth assignment of error is overruled.

## IV. Conclusion

{¶ 93} The trial court's judgment is affirmed in part and reversed in part. The trial court's judgment denying the award of attorney fees is hereby reversed and remanded.

It is ordered that each party equally bear the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
MARY J. BOYLE, J., CONCURS IN PART AND DISSENTS IN PART (WITH SEPARATE OPINION)

MARY J. BOYLE, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 94} I concur with the majority's decision concerning all but the second assignment of error. I respectfully dissent from the majority's awarding appellants all of their legal fees for two reasons. First, appellants seek legal fees under R.C. 1345.09(F)(1), not R.C. 1345.09(F)(2), which is cited by the majority. R.C. 1345.09(F)(2) concerns the supplier's knowledge of a violation, not the consumer's bad faith in claiming a violation. "Bad faith" under R.C. 1345.09(F)(1)

> "embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another."

*Semco, Inc.*, 2013-Ohio-4109, ¶ 45, quoting *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148, 187 N.E.2d 45 (1962), paragraph two of the syllabus, overruled on other grounds by *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994).

{¶ 95} Here, the trial court concluded that Shury produced "some evidence" of his CSPA claims, these claims "survived directed verdict," and two of the CSPA

claims were submitted to and resolved by the jury. Journal entry No. 120396330, p. 2 (Dec. 31, 2021.). Therefore, I would not find that the trial court abused its discretion in concluding that Shury's CSPA claims were neither groundless nor made in bad faith.

{¶ 96} Second, I would not find that the trial court abused its discretion in denying appellants' request for their entire legal bill based on appellants' failure to separate the fees they incurred in pursuing their breach-of-contract and defamation counterclaims from the fees they incurred in defending Shury's CSPA claims. In *Bittner*, 58 Ohio St.3d 143, 569 N.E.2d 464 (1991), the Ohio Supreme Court recognized that contract and CSPA claims "can be separated into a claim for which fees are recoverable and a claim for which no fees are recoverable, [and] the trial court must award fees only for the amount of time spent pursuing the claim for which fees may be awarded." *Id.* at 145.

{¶ 97} In the instant case, the trial court distinguished Shury's CSPA claims that involved both his "right to a repair estimate" and appellants' "failure to give a receipt," from appellants' breach-of-contract counterclaim, which "involved Shury's refusal to pay the repair bill on his auto either because the billings were excessive or the work was substandard." Journal entry No. 120396330, p. 2 (Dec. 31, 2021.). The trial court also distinguished Shury's CSPA claims from appellants' defamation counterclaim, finding that "[n]o part of the defamatory or disparaging statements attributed to Shury involved allegations that [appellants] violated the OCSPA." Journal entry No. 120396330, p. 2 (Dec. 31, 2021.). By not separating the time it

spent defending Shury's CSPA claims from the time it spent pursuing its breach-of-contract and defamation counterclaims, counsel for appellants left the trial court without "means to determine the extent of fees related to [the] OCSPA claims and [without] any means to gauge the reasonableness of such fees." Journal entry No. 120396330, p. 2 (Dec. 31, 2021.); *see Bittner* at 145.

{¶ 98} The cases cited by the majority to support awarding appellants' legal fees are distinguishable because in each case, the court found that the CSPA claims and the associated claims shared "a common core of facts." *See Bryant*, 2002-Ohio-2577, at ¶ 35 (finding plaintiff's fraud allegation and allegation of deceptive acts in violation of the CSPA "involve a common core of facts"); *Gonzalez*, 2005-Ohio-3415, at ¶ 39 (finding plaintiff's CSPA and fraud and theft claims had "common core facts"); *Nadathur*, 2013-Ohio-1283, at ¶ 18 (finding breach-of-contract and trade-secret claims "involved a common core of facts" based on a confidentiality agreement providing for reasonable attorney fees to the prevailing party in an action to enforce the agreement). In contrast, here, the trial court concluded that appellants' breach-of-contract counterclaim "presented a totally separate subject matter" from Shury's CSPA claims and that no part of appellants' defamation counterclaim involved Shury's allegation that appellants violated the CSPA.

{¶ 99} Because the trial court provided clear reasons why it found that Shury's CSPA claims were neither groundless nor made in bad faith and why it denied appellants' request for its entire legal bill, I decline to find that the trial court's denial of attorney fees evidences a "'perversity of will, passion, prejudice, partiality, or

moral delinquency.'"  *Johnson*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, at ¶ 35, quoting *Black's Law Dictionary* 11 (2d Ed.1910).  Therefore, I would overrule appellants' second assignment of error.