JOURNAL ENTRY and OPINION
{¶ 1} Appellants John Spofford and Spofford Auto Sales (hereinafter collectively referred to as "Spofford") appeal from the trial court's judgment in favor of appellees Javier and Julissa Gonzalez. Spofford sets forth the following errors for our review:
"I. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANTS WHEN IT UNFAIRLY CHARACTERIZED DEFENDANT-APPELLANT JOHN SPOFFORD AS A CONVICTED FELON AND FURTHER ATTACKED THE CREDIBILITY OF JOHN SPOFFORD DURING TRIAL."
"II. THE TRIAL COURT ERRED AND PREJUDICED DEFENDANT-APPELLANTS WHEN IT FOUND THEY COMMITTED VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT AND THEFT BY DECEPTION."
"III. THE TRIAL COURT ERRED IN ITS CALCULATION OF DAMAGES."
"IV. THE TRIAL COURT ERRED AND UNDULY PREJUDICED DEFENDANT-APPELLANTS WHEN IT OVERRULED NUMEROUS OBJECTIONS MADE BY DEFENDANT-APPELLANTS."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} On August 7, 2003, the Gonzalezes filed a complaint against John Spofford, Michelle Spofford, Spofford Auto Sales, Packard Properties, LLC, and Joseph Orlando.[1] The Gonzalezes alleged violations of the Consumer Sales Practices Act, breach of contract, tortious breach, theft under R.C. 2307.60 and 2307.61, fraud and deceit.
 {¶ 4} A two-day bench trial commenced on August 9, 2004. The Gonzalezes testified that they purchased a 1999 Mitsubishi Diamante from John Spofford based on his promise that he would assume complete financial liability for the 1995 Mitsubishi Galant they owned at the time.
 {¶ 5} A trade-in of the Galant was initially suggested by Spofford's salesman, Joe Orlando, but the Gonzalezes were unable to afford the increased payments that would result. Orlando told them the Galant's trade-in value was $3,000 less than they owed on it. The Gonzalezes' sister-in-law, Beatris DeJesus, wanted the Galant and offered to refinance the balance of the lease in her name. However, when Orlando calculated that DeJesus' monthly payments would be higher than the Gonzalezes' monthly payments, she stated she could not afford the car. Orlando immediately recalculated the amount to an amount she could afford. However, DeJesus was suspicious of Orlando and refused to refinance the car.
 {¶ 6} The Gonzalezes told Orlando that because they were unable to pay off the note on the Galant, they were not interested in purchasing the Diamante. Orlando asked them to wait until he spoke with the manager, John Spofford. Spofford approached and told the Gonzalezes that he would assume the Galant note if they would purchase the Diamante. When they questioned him, Spofford told them that he would try to sell the car, and if he made money on the sale, it would be his profit, and if he lost money, it would be his loss. When the Gonzalezes further questioned him, Spofford assured them it would be as if the Galant was his.
 {¶ 7} After Spofford assured the Gonzalezes that they were no longer financially responsible for the Galant, they signed the contract to purchase the Diamante. They removed their personal belongings from the Galant, removed the license plates, and drove away in the Diamante.
 {¶ 8} A month later, the Gonzalezes received a notice from Huntington Bank, advising them that they were in default on the Galant note. Julissa Gonzalez called Orlando, who informed her that the payment had been due when they made the deal; therefore, this payment should be made by her. The Gonzalezes, therefore, made the payment.
 {¶ 9} The following month, they received another default notice. Orlando then informed Julissa Gonzalez that the Galant had been sold, and the paperwork was being processed to pay off the note. The Gonzalezes protested having to make another payment; therefore, they scheduled a meeting with Orlando and Spofford.
 {¶ 10} Before the meeting, however, the Gonzalezes received a call from Parma Heights detective Wayne Mockler, who informed them that a Sharon Wilson had reported the Galant as stolen. Although Wilson stated the car was hers, the VIN number indicated the Gonzalezes were the owners. The Gonzalezes later received a message on their answering machine from Orlando asking them to pick up the Galant from the dealership. Later that same day, Julissa Gonzalez saw Orlando and another man park the Galant across her driveway. Although Orlando insisted that Julissa Gonzalez accept the keys she refused to do so upon the advice of her attorney.
 {¶ 11} Wilson testified that in February 2002, Orlando sold her the Galant for $2,500 at Spofford Auto Sales. On the day the car was stolen, Orlando called Wilson at home and asked if she was going to work that day. Later that day, the car was stolen from Wilson's place of employment. Wilson went to the dealership to complain, but Orlando and Spofford were not there. She finally reached Orlando by telephone several days later and requested that he return her personal belongings that were in the car along with the money she had paid him. Orlando denied stealing the car and told her that the Gonzalezes had done so.
 {¶ 12} Spofford testified that he owned Spofford Auto Sales, located at 588 East 152nd Street in Cleveland. He claimed that Joseph Orlando was an independent contractor at Spofford Auto Sales. Spofford denied that he made representations to the Gonzalezes as to the Galant. He claimed that because no paper work had been generated as part of the transaction nor a stock number assigned to the Galant, indicated he had not been involved with the deal. Spofford believed that Orlando set up a "side deal" with the Gonzalezes, which was outside the scope of Orlando's authority. Spofford was unable to produce the requisite tax records to show that Orlando was an independent contractor. He admitted that regardless of whether Orlando was an independent contractor, Spofford's dealer's license required that he supervise his sales force.
 {¶ 13} Spofford admitted and records were introduced at trial indicating that he had been sued at least thirty-two times in the court of common pleas; thirteen consumer complaints were filed against him with the Ohio Attorney General Consumer Practice Section; his dealer license was suspended twice by the Bureau of Motor Vehicles; his dealer license was revoked in 1999 for more than sixty violations; and he had been convicted of attempted tampering with records relating to a consumer transaction.
 {¶ 14} The trial court found Spofford liable for theft by deception under R.C. 2307.61 and also found he violated the Consumer Sales Practices Act. The trial court awarded the Gonzalezes $695.52 on the theft by deception claim and treble damages in the amount of $43,963.50 on the Consumer Sales Practices Act claim, plus $15,000 in attorney fees. Spofford now appeals.
Evidence of Prior Conviction
 {¶ 15} In Spofford's first assigned error, he argues the trial court erred by allowing evidence that he had a prior conviction for tampering with records.
 {¶ 16} We note that Spofford never objected to the questions regarding his prior conviction; therefore, he has waived all but plain error.[2]
The decision to correct plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."[3] We decline to find plain error in this case.
 {¶ 17} Trial courts have broad discretion in the admission or exclusion of evidence.[4] "The term `abuse of discretion' suggests more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."[5] Accordingly, to find an abuse of discretion, we must find that the trial court committed more than a mere error of judgment.
 {¶ 18} Evid.R. 609(3) provides as follows:
"Notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B),evidence that any witness, including the accused, has been convicted of acrime is admissible if the crimes involved dishonesty or falsestatement, regardless of the punishment and whether based upon state orfederal statute or local ordinance."
 {¶ 19} Thus, evidence of a prior conviction involving a crime of dishonesty is admissible unless outweighed by undue delay or cumulative evidence pursuant to Evid. 403(B).[6] Spofford failed to show any considerations of undue delay or that the evidence was a needless presentation of cumulative evidence. Spofford's credibility was at issue, and the fact he had a prior conviction for tampering with records, which is a crime of dishonesty, was relevant to his credibility. Therefore, no plain error occurred.
 {¶ 20} Spofford also claims the trial court's belief that the conviction was a felony, instead of a misdemeanor, was prejudicial. However, it is irrelevant whether Spofford's conviction was a felony or a misdemeanor. The crucial factor was it involved a crime of dishonesty. Accordingly, Spofford's first assigned error is overruled.
Manifest Weight of the Evidence
 {¶ 21} In his second assigned error, Spofford argues that the trial court erred in finding he violated the Consumer Sales Practice Act and committed theft by deception. We disagree.
 {¶ 22} It is well established that in reviewing the weight and sufficiency of the evidence upon which a trial court bases its decision, an appellate court must affirm the judgment of the trial court on appeal if the trial court's decision is supported by some competent, credible evidence.[7]
 {¶ 23} In the instant case, Spofford argues Orlando was responsible for the arrangement with the Gonzalezes and was an independent contractor. However, the Gonzalezes testified otherwise. According to Julissa and Javier Gonzalez and their sister-in-law, Beatris DeJesus, Spofford told them he would relieve them from all financial responsibility for the Galant if they purchased the Diamante. Therefore, there was direct evidence that Spofford made the promise and not Orlando. Thus, it is irrelevant whether Orlando was an independent contractor. The trial court specifically found that the Gonzalezes were more credible than Spofford and, therefore, believed their version of the story.
 {¶ 24} According to the Gonzalezes, the promise by Spofford induced them to enter into a contract to purchase the Diamante. They claimed they would not have purchased the Diamante had they known they would also be responsible for the Galant. This was sufficient evidence to support their Consumer Sales Practices Act claim and theft by deception claim.
 {¶ 25} The Ohio Attorney General has enacted and promulgated rules to implement and define various deceptive acts and trade practices pursuant to delegated authority contained in R.C. 1345.05(B) and R.C. Chapter 119. These are set forth in the Ohio Administrative Code.[8] O.A.C. 109:4-3-16(B)(16) requires the dealer to integrate all representations or promises in an integrated contract:
(B) It shall be a deceptive and unfair act or practice for a dealer, ** * in connection with the advertisement or sale of a motor vehicle, to:* * * (16) Fail to integrate into any written sales contract, allmaterial statements, representations or promises, oral or written, madeprior to obtaining the consumer's signature on the written contract withthe dealer; * * *.
 {¶ 26} The burden is placed on the supplier, an automobile dealer in this case, to integrate in the final contract "all material statements, representations or promises, oral or written."[9] In the instant case, Spofford's specific promise to assume financial responsibility for the Galant was made for the specific purpose of inducing the Gonzalezes to purchase the Diamante. Therefore, the promise was material and, pursuant to O.A.C. 109 4-3-16(B)(16), it was required to be integrated into the written sales contract.
 {¶ 27} This unfulfilled promise also supports the Gonzalezes' theft by deception claim, which was brought as a civil claim pursuant to R.C.2307.60. R.C. 2307.60 provides that any victim of a criminal act may recover "full damages" in a civil action. The section specifically provides that a criminal conviction of the crime is not a condition precedent to civil liability.
 {¶ 28} Theft by deception is defined pursuant to R.C. 2913.02
as:
"(A) No person, with purpose to deprive the owner of property orservices, shall knowingly obtain or exert control over either theproperty or services in any of the following ways:
"* * *
By deception."
 {¶ 29} Spofford deprived the Gonzalezes the use of the Galant by falsely representing that he would take over the financial responsibility for the vehicle. Instead, Orlando sold the Galant and Spofford failed to apply the proceeds to the debt. This resulted in the Gonzalezes having to make four monthly payments on the Galant without actually having possession of the vehicle. The fact the Galant was sold without Spofford applying any of the proceeds towards the note, indicates his intent to defraud.
 {¶ 30} Thus, based on the record, the evidence supported the trial court's finding Spofford violated the Ohio Consumer Sales Practices Act and committed theft by deception. Accordingly, Spofford's second assigned error is overruled.
Damages
 {¶ 31} In his third assigned error, Spofford argues that the trial court miscalculated the damages awarded to the Gonzalezes and erred in awarding attorney fees.
 {¶ 32} Spofford first argues that the trial court erred in awarding damages for the Galant, because Spofford had nothing to do with the promise regarding the vehicle. However, as we stated, sufficient evidence was presented that Spofford made the representation that he would assume the debt for the Galant. Therefore, the requisite intent was established. The trial court awarded the Gonzalezes $695.52 for the theft of the Galant, as that was the amount of the payments they made while not having use of the car.
 {¶ 33} Spofford also argues that the trial court should not have awarded any damages regarding the Diamante because the Gonzalezes had no complaint regarding the Diamante. The trial court awarded treble damages based on the contract price of the Diamante. We conclude this award was appropriate, because the Gonzalezes stated they would not have purchased the Diamante had they known they would also be financially responsible for the Galant. Spofford's misrepresentation induced the Gonzalezes to assume a debt they could not afford.
 {¶ 34} Spofford also argues that the trial court erred in awarding attorney fees to the Gonzalezes. Under R.C. 1345.09(F), a trial court, in its discretion, may award a consumer reasonable attorney fees when the supplier in a consumer transaction intentionally commits an act or practice which is deceptive, unfair, or unconscionable.[10] Spofford argues that because Orlando orchestrated the fraudulent scheme without his knowledge, there was no evidence he "intentionally" committed a fraudulent act. However, as we stated, there was sufficient evidence that Spofford, not Orlando, made the representation to the Gonzalezes that he would assume financial responsibility for the Galant. Therefore, there was evidence that Spofford intended to deceive the Gonzalezes because once the car was sold, none of the proceeds were ever applied to the loan.
 {¶ 35} Spofford contends that even if the attorney fees were warranted, the court awarded the incorrect amount. He argues the Gonzalezes' attorney spent an excessive amount of time on a claim that he did not pursue. Spofford also contends the attorney should be limited to the fee amount he agreed to with the Gonzalezes, that is, 40% of amount recovered at trial.
 {¶ 36} It is well settled that where a court is empowered to award attorney fees by statute, the amount of such fees is within the sound discretion of the trial court.[11] Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere.[12] "The trial judge which participated not only in the trial but also in many of the preliminary proceedings leading up to the trial has an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court."[13]
 {¶ 37} In Bittner v. Tri-County Toyota, Inc.[14] the Court stated the following considerations apply in considering the reasonable amount of attorney fees to award in a consumer case:
"When awarding reasonable attorney fees pursuant to R.C. 1345.09(F)(2), the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may modify that calculation by application of the factors listed in DR 2-106(B). These factors are: the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent. All factors may not be applicable in all cases and the trial court has the discretion to determine which factors to apply, and in what manner that application will affect the initial calculation."[15]
 {¶ 38} In the instant case, attorney Gallup testified that his fees totaled $30,000. However, he did not request the entire amount. Instead, based on the claims involved, work performed, and his experience as an attorney, he reduced the amount requested to $15,000. The trial court found this amount, which represented half the legal bill, to be reasonable.
 {¶ 39} Although some of the fees may have been related to the fraudulent transfer claim, which was not pursued, fees may be awarded for claims related to the violation of the Consumer Sales Practices Act, when they are not easily separated.[16] The fraudulent transfer claim and the violation of the Consumer Sales Practices Act presented common core facts and, therefore, were not easily separated.[17]
 {¶ 40} Finally, although Spofford argues attorney Gallup should be limited by the contingency fee agreement he had with the Gonzalezes, this would have resulted in attorney fees in the amount of $17,585, which is more than the amount awarded. Moreover, the Supreme Court in Bittner
stated that in determining whether an award is reasonable under R.C.R.C.1345.09(F)(2), the court should first multiply the number of hours expended by a reasonable hourly rate. Given this, a contingency fee agreement is merely a consideration in determining a reasonable fee. It is not the sole consideration.[18] Accordingly, Spofford's third assigned error is overruled.
Admission of Evidence and Testimony
 {¶ 41} In his fourth assigned error, Spofford argues the trial court erred by allowing certain testimony and exhibits into evidence. As we stated in addressing Spofford's first assigned error, the trial court has broad discretion in the admission or exclusion of evidence.[19]
Therefore, unless the court abused its discretion, we must affirm its decisions regarding the admission of evidence.
 {¶ 42} Spofford first argues the court erred by allowing Sonya Anderson to testify over objection. Spofford contends Anderson's testimony was irrelevant because it concerned an unrelated claim she had against Spofford.
 {¶ 43} Although we agree Anderson's testimony should not have been admitted, it appears the trial court gave her testimony no credence, as it reprimanded the Gonzalezes' attorney for presenting the witness and would not permit counsel to continue with three other similar witnesses. In reviewing a trial to the bench, an appellate court presumes a trial court considers only relevant, competent, and credible evidence in reaching its decision.[20]
 {¶ 44} Spofford also argues the trial court erred by admitting exhibits of his prior criminal record, numerous consumer complaints, and violations into evidence. We disagree.
 {¶ 45} Evid.R. 404(B) provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 46} The records concerning Spofford's other consumer violations proved that he intended to deceive the Gonzalezes, just as he had deceived other customers under similar circumstances. It also proved he knew that what he was doing was wrong, and it was not a mistake, and was his customary practice to deceive his customers.
 {¶ 47} Moreover, Spofford testified that his "temporary tag" privileges were revoked because of more than sixty violations of his dealer's license, his dealer's license had been suspended twice by the Bureau of Motor Vehicles, numerous complaints were filed against him with the Ohio Attorney General's Consumer Protection Section, and he had been sued thirty-two times in the common pleas court. Therefore, the admission of the records was not prejudicial because even without the records there was evidence of these violations via Spofford's testimony.
 {¶ 48} Spofford also argues the trial court erred by allowing the Gonzalezes' attorney to testify regarding Sonya Anderson's statement that Spofford altered documents when he sold a vehicle to her. These statements were not testimony, but were made in response to the trial court's questioning why Anderson's claim was relevant to the Gonzalezes' case. As we previously stated, the trial court found Anderson's testimony was not relevant. Therefore, the attorney's statement did not impact the trial court's decision. Accordingly, Spofford's fourth assigned error is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., and McMonagle, J., Concur.
[1] Michelle Spofford, Packard Properties, LLC, and Joseph Orlando were later dismissed.
[2] State v. Hartman, 93 Ohio St.3d 274, 281, 2001-Ohio-1580; State v.Allen, 73 Ohio St.3d 626, 634, 1995-Ohio-283.
[3] State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
[4] State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus.
[5] State v. Adams (1980), 62 Ohio St.2d 151, 157.
[6] See Giannelli Snyder (1996), Rules of Evidence Handbook, Author's Comment, Rule 609.
[7] C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus; Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77,80.
[8] Renner v. Derin Acquisition Corp. (1996), 111 Ohio App.3d 326.
[9] Gaylan v. Dave Towell Cadillac (1984), 15 Ohio Misc.2d 1, 2 (dealer violated CSPA by failing to integrate all material statements, representations, and promises made prior to the sales agreement).
[10] Parker v. IF Insulation Co., 89 Ohio St.3d 261, 2000-Ohio-151;Einhorn v. Ford Motor Co. (1990), 48 Ohio St.3d 27.
[11] Bittner v. Tri-County Toyota (1991), 58 Ohio St.3d 143.
[12] Id.
[13] Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc. (1985),23 Ohio App.3d 85, 91.
[14] Bittner, supra at 146.
[15] Bittner, supra at 145-146.
[16] Fit `N' Fun Pools, Inc. v. Shelly (Jan. 3, 2001), 9th Dist. No. C.A. NO. 99CA0048.
[17] Bryant v. Walt Sweeney Auto. Inc. (May 31, 2002), 5th Dist. Nos. C-010395, C0-10404; Parker v. IF Insulation Co., Inc. (May 27, 1998), 1st Dist. No. C-960602; Budner v. Lake Erie Homes, 11 Dist. No. 2000-P-0108, 2001-Ohio-4288; Luft v. Perry County Lumber Supply Co.,
10 Dist. No. 02AP-559, 2003-Ohio-2305.
[18] Crawford v. Bill Swad Chevrolet, Inc. (Sept. 19, 2000), 10th Dist. No. 00AP-188.
[19] State v. Long, supra.
[20] State v. Post (1987), 32 Ohio St.3d 380, 384; State v. Wiles
(1991), 59 Ohio St.3d 71.