[Cite as *Lunar Lagoons, L.L.C. v. Stephens*, 2025-Ohio-2389.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

LUNAR LAGOONS LLC,

    PLAINTIFF-APPELLEE

**CASE NO. 10-24-11**

  v.

GREG STEPHENS,

    DEFENDANT-APPELLANT.

**OPINION AND
JUDGMENT ENTRY**

Appeal from Celina Municipal Court
Civil Division
Trial Court No. 2023 CVF 00507

**Judgment Affirmed in Part, Reversed in Part, and Cause Remanded**

**Date of Decision: July 7, 2025**

**APPEARANCES:**

    *Frank J. Patrizio* **for Appellant**

    *Christopher J. Ellington* **for Appellee**

**WALDICK, P.J.**

{¶1} Defendant-appellant, Greg Stephens ("Stephens"), appeals the July 19, 2024 judgment of the Celina Municipal Court granting summary judgment to plaintiff-appellee, Lunar Lagoons LLC ("Lunar Lagoons" or "the company"), and the November 25, 2024 judgment of that same court in which an award of attorney fees was granted to Lunar Lagoons against Stephens. For the reasons set forth below, we affirm in part and reverse in part.

*Procedural History*

{¶2} This case originated on September 25, 2023, when Lunar Lagoons filed a complaint for money damages against Stephens in the trial court. The complaint alleged that Lunar Lagoons is an Ohio limited liability company with its principal place of business in Maria Stein, Ohio. The complaint alleged that Stephens had transacted business with Lunar Lagoons by virtue of placing orders with and requesting services from the company. The complaint alleged that Stephens had failed to pay for items ordered and services received from Lunar Lagoons. The complaint alleged that, as a result of Stephens failing to pay for items purchased and services provided, Lunar Lagoons had been damaged in the amount of $6,082.84, plus interest. A second claim for relief alleged the same background facts and asserted that Stephens had been unjustly enriched in the amount of $6,082.84 for goods and/or services received. A third claim for relief asserted, on the basis on the

same alleged facts, that Stephens owed Lunar Lagoons on open account the sum of $6,082.84. On those bases, Lunar Lagoons demanded judgment against Stephens in the amount of $6,082.84, plus interest at the statutory rate per annum.

{¶3} On October 24, 2023, Stephens filed an answer, setting forth eight affirmative defenses. In that same filing, Stephens also counterclaimed. The counterclaim asserted that, in 2022, Lunar Lagoons' representatives serviced the pool located at Stephens' residence in Piqua, Ohio. The counterclaim alleged that, after Stephens' pool control panel, or controller, began to fail, Stephens asked Lunar Lagoons' service representative whether the company could repair or replace the control panel. The counterclaim further alleged that Lunar Lagoons had subsequently installed a replacement pool control panel for Stephens, that a key function of the new controller was that it could be accessed and operated from Stephens' cell phone, and that the cell phone feature did not work after the control panel was installed. Stephens' counterclaim asserted that the transaction between the parties was a consumer transaction as defined by R.C. 1345.01 and was covered by the "Home Solicitation Act" as set forth in R.C. 1345.21 through R.C. 1345.28. The counterclaim alleged that Lunar Lagoons' actions in selling Stephens the control panel constituted a deceptive act or practice relating to a consumer transaction and therefore violated R.C. 1345.02 for several reasons: the failure to provide a written agreement, the failure to provide a notice of cancellation, and the failure to orally advise Stephens that he had the right to cancel the

contract. Stephens' counterclaim alleged that he had advised Lunar Lagoons on October 20, 2023 that any agreement the parties may have had was cancelled but that Lunar Lagoons had failed to dismiss its complaint. As a result, Stephens' counterclaim asserted that he was entitled to a rescission of the agreement between the parties, economic damages, and noneconomic damages not exceeding $5,000.00.

{¶4} On November 22, 2023, Lunar Lagoons filed an answer to Stephens' counterclaim, in which Lunar Lagoons denied the bulk of the allegations in the counterclaim, but admitted that the company had agreed to install a pool controller at Stephens' residence and that the company then subsequently did install the controller. Lunar Lagoons also raised several defenses to Stephens' counterclaim, including that the transaction at issue was not a "home solicitation sale" as defined by R.C. 1345.21, and requested that the counterclaim be dismissed.

{¶5} On November 22, 2023, Lunar Lagoons also filed an amended complaint, which added a fourth claim for relief. That fourth claim for relief alleged that, prior to the commencement of the litigation, Stephens' counsel represented to counsel for Lunar Lagoons that Stephens would pursue claims under the Ohio Consumer Sales Practices Act ("CSPA"), R.C. 1345.01 *et seq*., and the Ohio Home Solicitation Sales Act ("HSSA"), R.C. 1345.21 *et seq*., unless the company agreed to perform additional services on Stephens' property beyond the scope of the original contract and free of charge. That fourth claim for relief alleged that

Stephens' counterclaim asserting violations of the CSPA and the HSSA was groundless for multiple reasons, and was brought in bad faith. Lunar Lagoons asserted that, pursuant to R.C. 1345.09(F)(1), it was entitled to an award of reasonable attorney fees incurred to defend against Stephens' groundless, bad-faith claims.

{¶6} On December 7, 2023, Stephens filed an answer and amended counterclaim in response to Lunar Lagoons' amended complaint. In that answer and amended counterclaim, Stephens denied the bulk of the new allegations set forth in the amended complaint and reiterated the affirmative defenses and counterclaim raised in Stephens' initial answer.

{¶7} On December 11, 2023, Lunar Lagoons filed an answer to Stephens' amended counterclaim. In that answer, the company again denied the bulk of the allegations in the amended counterclaim, while admitting that the company had agreed to install a pool controller at Stephens' residence and that the company had subsequently installed the controller. Lunar Lagoons also again raised several defenses to Stephens' amended counterclaim, including that the transaction at issue was not a "home solicitation sale" as defined by R.C. 1345.21, and requested that the amended counterclaim be dismissed.

{¶8} On March 4, 2024, Lunar Lagoons filed a motion for summary judgment on its amended complaint and on the amended counterclaim filed by Stephens, asserting that the company was entitled to judgment in its favor as a matter

of law. Attached to the motion were several affidavits and other documentation relied upon by Lunar Lagoons in support of its position.

{¶9} On April 11, 2024, Stephens filed a response to Lunar Lagoons' motion for summary judgment, attached to which was an affidavit by Stephens and two documents relating to prior pool maintenance performed by the company for Stephens.

{¶10} On July 19, 2024, the trial court filed a judgment entry in which the court summarily found that there was no issue as to any material fact and that Lunar Lagoons was entitled to judgment as a matter of law. The trial court therefore granted summary judgment in favor of Lunar Lagoons and against Stephens.

{¶11} On October 22, 2024, an evidentiary hearing was held on the issue of attorney fees.

{¶12} On November 25, 2024, the trial court filed a judgment entry finding that Stephens' counterclaim under the Consumer Sales Practices Act was groundless and that he had filed and maintained the action in bad faith. The trial court therefore found that, based on R.C. 1345.09(F)(1), Lunar Lagoons was entitled to recover its reasonable attorney fees. The trial court ordered that Stephens pay attorney fees to the company in the amount of $18,220.00, representing the attorney fees incurred by Lunar Lagoons since October 24, 2023, the date on which Stephens filed his counterclaim raising the CSPA claims.

**{¶13}** On December 20, 2024, Stephens filed the instant appeal, raising four assignments of error for our review.

**First Assignment of Error**

**The trial court erred by granting appellee's motion for summary judgment because issues of material facts and law clearly remained after the filing of appellee's motion and appellant's response to summary judgment.**

**Second Assignment of Error**

**The trial court erred by granting appellee late fees when no contract existed that authorized appellee to charge such fees.**

**Third Assignment of Error**

**The trial court erred by dismissing appellant's counterclaim and finding that appellee was entitled to attorney fees on said claim.**

**Fourth Assignment of Error**

**The court erred by awarding plaintiff attorney fees based on an arbitrary date of filing with no relation to plaintiff's work performed by plaintiff's attorneys in defending defendant's Home Solicitation Act claim.**

*First Assignment of Error*

**{¶14}** In the first assignment of error, Stephens asserts that the trial court erred in granting summary judgment in favor of Lunar Lagoons on the issue of Stephens' liability on the claims alleged in Lunar Lagoons' amended complaint.

Civ.R. 56(A) provides, in relevant part:

A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may move with or without supporting affidavits for a summary judgment in the party's favor as

to all or any part of the claim, counterclaim, cross-claim, or declaratory judgment action. * * *

Civ.R. 56(C) provides, in relevant part:

* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

**{¶15}** "Pursuant to Civ.R. 56(C), summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party." *Tharp v. Whirlpool Corp.*, 2018-Ohio-1344, ¶ 24 (3d Dist.), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

**{¶16}** "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Ineos USA L.L.C. v. Furmanite America, Inc.*, 2014-Ohio-4996, ¶ 18 (3d

Dist.), citing *Dresher v. Burt,* 75 Ohio St.3d 280, 292 (1996). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.* "The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; the nonmoving party may not rest on the mere allegations or denials of the pleadings." *Id.*, citing *Dresher* at 293; Civ.R. 56(E).

{¶17} "Material facts" are facts "that might affect the outcome of the suit under the governing law." *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993) citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). "Whether a genuine issue exists is answered by the following inquiry: Does the evidence present 'a sufficient disagreement to require submission to a jury' or is it 'so one-sided that one party must prevail as a matter of law[?]'" *Id.*, citing *Anderson*, 477 U.S. at 251-252.

{¶18} Appellate courts conduct a de novo review of a trial court's decision on a motion for summary judgment. *Hancock Fed. Credit Union v. Coppus*, 2015-Ohio-5312, ¶ 15 (3d Dist.), citing *Esber Beverage Co. v. Labatt USA Operating Co., L.L.C.,* 2013-Ohio-4544, ¶ 9. Thus, this Court must conduct an independent review of the evidence and arguments that were before the trial court without deference to the trial court's decision. *Tharp v. Whirlpool Corp.*, *supra*, at ¶ 23.

{¶19} Finally, given the nature of the claims raised in Lunar Lagoons' complaint, we note that "'[a] contract is generally defined as a promise, or a set of

promises, actionable upon breach.'" *Kostelnik v. Helper*, 2002 Ohio 2985, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D. Ohio 1976). "'Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'" *Id.*

{¶20} In the instant case, the complaint filed by Lunar Lagoons on September 25, 2023, and the amended complaint filed by Lunar Lagoons on November 22, 2023, alleged, *inter alia*, that Stephens had transacted business with Lunar Lagoons by virtue of placing orders with and requesting services from Lunar Lagoons. The complaint alleged that Stephens had failed to pay for items ordered and services received from Lunar Lagoons, specifically being the equipment constituting a swimming pool control unit that Stephens purchased from the company and which the company installed on the pool at Stephens' residence, pursuant to a mutual agreement between the parties.

{¶21} Following this Court's de novo review of the trial court record as is relevant to the issue of summary judgment on the issue of Stephens' liability to pay for the pool control unit, and upon applying the governing law to the facts reflected by the record, we conclude that the trial court did not err in granting Lunar Lagoons' motion for summary judgment.

{¶22} Specifically, the pleadings and affidavits filed in the case at or before the summary judgment stage reflect the following: Lunar Lagoons is a company

specializing in the installation of custom in-ground swimming pools. The company also provides pool service and maintenance for customers in western Ohio and eastern Indiana. Lunar Lagoons operates its business from a fixed storefront location at 2259 Venture Drive in Maria Stein, Ohio, from which location the company sells pool equipment and pool maintenance services to the public.

**{¶23}** Stephens owns a 23-acre residential estate located in the Piqua, Ohio area, and employs a groundskeeper to assist in managing the premises. Stephens became a customer of Lunar Lagoons in 2020, when he and his groundskeeper hired the company to replace the heater for the in-ground pool located on the estate. Subsequently, the groundskeeper purchased pool chemicals from Lunar Lagoons and used Lunar Lagoons to service the pool. In May of 2022, a technician from Lunar Lagoons was present at Stephens' property for a service call relating to the pool. While there, the technician was approached by Stephens' groundskeeper, who requested a quote for the replacement of the pool's control panel. As a result of that request, Lunar Lagoons prepared a quote for the sale and installation of a Hayward OmniLogic control unit, Hayward being the brand that is compatible with the rest of the pool's equipment. One feature of that control unit is that, with an Internet connection, it can be accessed and operated via cell phone or other mobile device. The quote for the control unit was communicated digitally by Lunar Lagoons to Stephens' groundskeeper, and the quote was subsequently approved and accepted by Stephens through his groundskeeper. Lunar Lagoons then installed the

control unit on Stephens' pool, and it was programmed by a Hayward representative and confirmed to be working with the other preexisting pool equipment.

**{¶24}** After the pool control unit was installed and fully operational, Lunar Lagoons received complaints from Stephens that he was not able to access the control unit from his cell phone. As a result, representatives from Lunar Lagoons and Hayward visited Stephens' property in the summer of 2022 to check the control unit and ensure that it was properly installed and performing as designed, and they determined that it was. The Hayward representative also determined that the control unit was not responding to Stephens' cell phone because the Wi-Fi signal from the house on the 23-acre property was not strong enough to reach the pool area, which is a significant distance from the home. Stephens was advised that he would need to establish a stronger Wi-Fi signal to be able to access the control unit from his cell phone. It was suggested to Stephens that he utilize a Wi-Fi booster or hardwire an Internet connection closer to the pool in order to remedy the inadequate Wi-Fi signal to the pool control unit. Having determined for a second time that the pool control unit was fully operational and functioning as designed pursuant to the manufacturer's specifications, Lunar Lagoons sent Stephens an invoice on July 16, 2022 for the cost of the unit and its installation. In spite of Lunar Lagoons having fully performed its contractual obligations, and despite Stephens having used the control unit for two pool seasons, Stephens has failed to make payment to Lunar Lagoons for the control unit.

{¶25} On the facts of this case, we find that the trial court did not err in determining that, as a matter of law, Stephens is liable to Lunar Lagoons for the cost of the control unit and its installation, and in granting summary judgment to Lunar Lagoons for the same. Stephens purchased a product from Lunar Lagoons, who then installed it pursuant to the purchase agreement, and Stephens subsequently failed to pay for the product and its installation as agreed, even though the product was fully operational.

{¶26} While Stephens contends that he is not liable to pay for the cost and installation of the pool control unit because the unit's remote access feature, utilized via the Internet, does not currently work with his cell phone, Stephens does not deny the inadequacy of his home Wi-Fi signal as it relates to his inability to remotely access the unit via his cell phone or other mobile device. Rather Stephens merely asserts that "[o]ne of the features that induced me into having the control panel replaced by [Lunar Lagoons] was its representative advised me that the panel would have a feature that would allow me to access the panel's controls through my cell phone" and "I am not aware of [Lunar Lagoons], prior to the installation of the new control panel, ever checking my Wi-Fi signal to determine the compatibility of the control panel, the cell phone feature and my Wi-Fi signal." (April 11, 2024 Affidavit of Greg Stephens.). Notably, however, Stephens does not assert – much less present any supporting evidence – that Lunar Lagoons ever represented to him that the control unit could be controlled via cell phone without a Wi-Fi signal, nor

does he suggest that the company ever represented that the unit's remote access feature would work with Stephens' current Wi-Fi setup.

{¶27} By its very nature, an electronic device designed, in part, to be operated remotely via a Wi-Fi signal requires a Wi-Fi signal to be so operated. As a result, and because there is no evidence that the pool control unit does not fully function as designed, nor is there evidence that Lunar Lagoons was to provide an adequate Wi-Fi signal, Stephens had no valid basis upon which to refuse to pay Lunar Lagoons for the control unit he purchased from the company. In sum, Lunar Lagoons fully performed its obligation pursuant to the contractual arrangement with Stephens, and the company is entitled to judgment as a matter of law.

{¶28} The first assignment of error is overruled.

*Second Assignment of Error*

{¶29} In the second assignment of error, Stephens asserts that the trial court erred as to the specific sum of damages awarded to Lunar Lagoons pursuant to the summary judgment granted in favor of the company on its complaint. Specifically, Stephens takes issue with the fact that the amount of damages sought by, and awarded to, Lunar Lagoons included "late fees" imposed by the company in addition to the agreed-upon price for the sale and installation of the pool control panel at issue.

{¶30} With respect to this claim, the record reflects that Lunar Lagoons' complaint and amended complaint sought an award of damages in the amount of

$6,082.84, plus interest. A review of the invoice submitted as an exhibit with the complaint, and in the documentation filed in support of the company's motion for summary judgment, reflects that Lunar Lagoons' claim for $6,082.84 was based on the following: Hayward Omni Logic Base ($3,435.52), Hayward Omni Extra Relay ($420.55), Hayward Logic Wireless Antenna ($390.90), Hayward Kit Flo Switch and Unions ($301.35), and Delivery and Programming Fee ($150.00), which totals $4698.32. However, the company then added on a monthly "late fee" of $70.47 per month for the months of July of 2022 through August of 2023, with those late fees totaling $986.58. Based on the $4698.32 total price for the control unit combined with the $986.58 in late fees, the Lunar Lagoons invoice reflected a subtotal of $5684.90, upon which the company calculated Miami County sales tax at 7%, or $397.94, in reaching the total of $6,082.84 that the company alleged it was owed.

**{¶31}** The July 19, 2024 judgment entry in which the trial court granted summary judgment in favor of Lunar Lagoons and against Stephens does not specify an award of damages in any particular amount. Absent such a specification, this Court must assume – as the parties also do – that the summary judgment awarded to Lunar Lagoons included an award of damages in the amount of $6,082.84, as sought in the complaint.

**{¶32}** On appeal, Stephens argues that, as there was no contractual agreement between the parties permitting Lunar Lagoons to charge late fees on any unpaid balance owed by Stephens to the company, the trial court erred in awarding

of the total $6,082.84 amount sought by Lunar Lagoons. Stephens does not dispute that Lunar Lagoons may be entitled to prejudgment interest on a judgment in their favor, but he argues that the over 20% per annum interest, or "late fees", invoiced by the company on the outstanding original balance of $4698.32, is well in excess of the permissible statutory rate of prejudgment interest set forth in R.C. 1343.03. In response, Lunar Lagoons concedes that there was no written agreement between the parties as to late fees but argues that the company is entitled to prejudgment interest.

R.C. 1343.03(A) provides, in relevant part:

[W]hen money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon on all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

{¶33} Prejudgment interest compensates plaintiffs for the time between when the claim accrued and the judgment, "regardless of whether the judgment is based on a claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court." *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 73 Ohio St.3d 110, 110-111 (1995). While R.C. 1343.03(A), in conjunction with R.C. 5703.47, sets a default statutory interest rate,

if the parties' contract provides an interest rate "with respect to money that becomes due and payable," the interest rate in the contract prevails. *Eagle Realty Investments, Inc. v. Dumon*, 2022-Ohio-4106, ¶ 27 (1st Dist.).

**{¶34}** "Although a party that prevails on a contract claim is entitled to prejudgment interest as a matter of law, the amount of interest to be awarded is based on the trial court's factual determination of the accrual date and interest rate." *W&W Roofing & Siding, Inc. v. H.P. Group, L.L.C.*, 2001-Ohio-2248, *3 (3d Dist.). "These factual decisions will be reviewed on appeal under an abuse of discretion standard." *Id.* An abuse of discretion implies that the court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). However, "'[w]hether a trial court's determination of prejudgment * * * interest is reviewed de novo or, instead, for an abuse of discretion depends on the statutory basis for the interest and whether questions of law are involved.'" *Pacetti's Apothecary, Inc. v. Rebound Bracing & Pain Solutions, LLC*, 2023-Ohio-93, ¶ 19 (2d Dist.), quoting *Day Air Credit Union Inc., v. Davis*, 2021-Ohio-2054, ¶ 26 (2d Dist.).

**{¶35}** In the instant case, regardless of which standard of review is applied, we find that Stephens' contention regarding the sum of damages awarded has merit. Both parties correctly note that Lunar Lagoons is entitled to prejudgment interest on the judgment in their favor. However, as there was no agreement between the parties authorizing interest to be charged to Stephens at a rate other

than that authorized pursuant to R.C. 1343.03 and R.C. 5703.47, the statutorily designated rate of prejudgment interest is applicable. Thus, to the extent that the trial court awarded damages in an amount that was based upon Lunar Lagoons' calculation of late fees, or interest, at a rate well in excess of the statutorily designated rate of prejudgment interest, the trial court's decision was erroneous. Accordingly, the case must be remanded to the trial court so that an accurate determination of the sum of damages owed by Stephens on the judgment in favor of Lunar Lagoons can be calculated in accordance with law.

{¶36} The second assignment of error is sustained.

*Third Assignment of Error*

{¶37} In the third assignment of error, Stephens argues that the trial court erred in granting summary judgment in favor of Lunar Lagoons on Stephens' counterclaim that was based on the Ohio Consumer Sales Practices Act ("CSPA") and the Ohio Home Solicitation Sales Act ("HSSA"). Stephens further asserts that the trial court erred in determining that the counterclaim was groundless and made in bad faith and, on that basis, awarding attorney fees to Lunar Lagoons with respect to the counterclaim.

{¶38} Regarding Stephens' first argument, as to the propriety of the summary judgment entered against him on his counterclaim, we again note that appellate courts conduct a de novo review of a trial court's decision on a motion for summary judgment. *Hancock Fed. Credit Union v. Coppus*, *supra*, at ¶ 15 (3d Dist.),

citing *Esber Beverage Co. v. Labatt USA Operating Co., L.L.C.*, 2013-Ohio-4544, ¶ 9.

**{¶39}** The CSPA, set forth in R.C. 1345.01 *et seq.*, applies to consumer transactions and prohibits unfair or deceptive acts or practices by suppliers in consumer transactions, whether the unfair or deceptive act or practice occurs before, during, or after the transaction. R.C. 1345.02(A). With some exceptions not applicable here, a "consumer transaction" is defined by R.C. 1345.01(A) as a "sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things."

**{¶40}** The HSSA, set forth in R.C. 1345.21 to R.C. 1345.27, is designed to provide a consumer with a weapon against high pressure sales tactics occurring in the home. *R. Bauer & Sons Roofing & Siding, Inc. v. Kinderman*, 83 Ohio App.3d 53, 63 (1992), citing *Brown v. Martinelli*, 66 Ohio St.2d 45, 50 (1981).

**{¶41}** Home solicitation sales under the HSSA are governed by the CSPA, and the failure to comply with the HSSA constitutes a deceptive act or practice in connection with a consumer transaction in violation of the CSPA. *Altek Environmental Service Co. v. Harris*, 2009-Ohio-2011, ¶ 31 (5th Dist.). See, also, R.C. 1345.28.

**{¶42}** Under the HSSA, a home solicitation sale must include a written agreement that contains a statement of the buyer's right to cancel the contract until

midnight of the third business day after the day on which the buyer signs the contract. R.C. 1345.22 and 1345.23. Where no such provision is contained in a written agreement, the buyer's right to cancel the home solicitation sale does not expire. R.C. 1345.23(C). If the buyer decides to cancel the sale pursuant to the statutory guidelines, the seller must refund all payments made under the contract to the buyer and/or cancel any indebtedness arising on the buyer's part under the terms of the transaction. R.C. 1345.23(D)(4).

{¶43} Revised Code 1345.21(A) defines a "home solicitation sale" as "a sale of consumer goods or services in which the seller or a person acting for the seller engages in a personal solicitation of the sale at a residence of the buyer, including solicitations in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is there given to the seller or a person acting for the seller, or in which the buyer's agreement or offer to purchase is made at a place other than the seller's place of business."

{¶44} However, R.C. 1345.21 also specifically excepts certain types of transactions from that definition, and therefore precludes applicability of the HSSA to such excepted transactions. One of those exceptions is set forth in R.C. 1345.21(A)(4), and includes any transaction or transactions in which "[t]he buyer initiates the contact between the parties for the purpose of negotiating a purchase and the seller has a business establishment at a fixed location in this state where the

goods or services involved in the transaction are regularly offered or exhibited for sale."

{¶45} In the instant case, following this Court's de novo review of the trial court record as is relevant to the issue of summary judgment on Stephens' counterclaim pursuant to the CSPA and the HSSA, we conclude that the trial court did not err in granting Lunar Lagoons' motion for summary judgment in their favor on the counterclaim. Specifically, the pleadings and affidavits filed in the case by Lunar Lagoons reflect that Lunar Lagoons operates its business from a fixed storefront location at 2259 Venture Drive in Maria Stein, Ohio, at which location the company regularly exhibits and offers for sale the goods and services involved in the transaction at issue here, and the pleadings and affidavit filed by Stephens did not allege facts to the contrary as required by Civ.R. 56(E). The pleadings filed by both parties also reflect no disagreement on the fact that it was Stephens, through his groundskeeper, who initiated the contact with Lunar Lagoons related to the purpose of negotiating Stephens' purchase of the pool control unit. Accordingly, there was no genuine issue of material fact as to whether the transaction was governed by the CSPA and the HSSA, as the exception set forth in R.C. 1345.21(A)(4), *supra*, is applicable here and therefore precluded Stephens' counterclaim.

**{¶46}** In this third assignment of error, Stephens also argues that the trial court erred in finding that Lunar Lagoons was entitled, pursuant to R.C. 1345.09(F)(1), to an award of attorney fees relating to the counterclaim.

**{¶47}** R.C. 1345.09(F)(1) provides, in pertinent part, that in actions brought pursuant to the CSPA, "[t]he court may award to the prevailing party a reasonable attorney's fee * * * if * * * [t]he consumer complaining of the act or practice that violated this chapter has brought or maintained an action that is groundless, and the consumer filed or maintained the action in bad faith."

**{¶48}** As the CSPA does not define "groundless" or "bad faith", we apply the ordinary and common understanding of those terms. *Semco, Inc. v. Sims Bros.*, 2013-Ohio-4109, ¶ 42 (3d Dist.), citing *Culbreath v. Golding Ents., L.L.C.*, 2007-Ohio-4278, ¶ 22, citing R.C. 1.42. Thus, a groundless claim within the meaning of R.C. 1345.09(F)(1) is one that lacks a legal or factual basis or rationale. *Id.*, citing Black's Law Dictionary (9th Ed. 2009), *Palmer v. Daniel Troth & Son Builders, Inc.*, 1998 WL 255566, *5 (10th Dist.). In the same context, a bad faith claim is one involving "dishonesty of belief or purpose". *Semco, Inc.*, *supra*, at ¶ 45, citing *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.,* 2010–Ohio–5073, ¶ 8, quoting *Black's Law Dictionary* 159 (9th Ed. 2009). The Supreme Court of Ohio has more specifically described "bad faith" as follows:

> A lack of good faith is the equivalent of bad faith, and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral

obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.

*Id.*, citing *Slater v. Motorists Mut. Ins. Co.,* 174 Ohio St. 148 (1962), paragraph two of the syllabus, overruled on other grounds in *Zoppo v. Homestead Ins. Co.,* 71 Ohio St.3d 552 (1994).

**{¶49}** A trial court's decision to grant or deny attorney fees pursuant to R.C. 1345.09(F) is discretionary. *Price v. Evans Automotive Repair, Inc.*, 2024-Ohio-5108, ¶ 45 (10th Dist.), citing *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29 (1990).  Thus, we review a trial court's decision on an award of attorney fees under that statute for an abuse of that discretion. *Id.*, citing *Williams v. Gray Guy Group. L.L.C.*, 2016-Ohio-8499, ¶ 44 (10th Dist.).

**{¶50}** In the instant case, in the November 25, 2024 judgment entry awarding attorney fees to Lunar Lagoons pursuant to R.C. 1345.09(F)(1), the trial court found that Stephens' counterclaim under the Consumer Sales Practices Act was groundless and that he had filed and maintained the action in bad faith.  On the basis of the record before us, we cannot say that the trial court abused its discretion in so finding, as we agree that the counterclaim under the Consumer Sales Practices Act was groundless and that Stephens filed and maintained the action in bad faith.

**{¶51}** In reaching that determination, we note, as discussed in detail above, that the initial complaint filed in this matter by Lunar Lagoons was based on Stephens' failure, over the course of more than a year's time, to pay for a fully

operational pool control unit that Stephens purchased from, and had installed by, the company in 2022. Stephens' refusal to pay for the control unit was based solely on his irrational position that the control panel's remote access feature, utilized via the Internet, did not work, when it was actually Stephens' undisputed lack of an adequate Wi-Fi signal at his pool area that prevented him from remotely accessing the control panel. Once Lunar Lagoons filed its legally and factually meritorious complaint, Stephens opted to compound and complicate the legal proceeding by asserting and maintaining a frivolous counterclaim under the CSPA and HSSA, where it was clear that such a claim was precluded pursuant to the express terms of those statutory provisions and the facts of this case.

{¶52} We further note that in the amended complaint filed on November 22, 2023 by Lunar Lagoons in response to Stephens' initial answer and counterclaim, the company alleged that, prior to the commencement of the litigation, Stephens' counsel represented to counsel for Lunar Lagoons that Stephens would pursue claims under CSPA and the HSSA unless the company agreed to perform additional services on Stephens' property beyond the scope of the original contract and free of charge. That allegation was supported by facts set forth in an affidavit filed by Lunar Lagoons in support of its motion for summary judgment, and those undisputed facts reflect the type of bad faith that an award of attorney fees pursuant to R.C. 1345.09(F)(1) was designed to redress.

{¶53} In light of the above, we find that the trial court was well within its discretion in determining that Stephens' counterclaim alleging violations of the CSPA and the HSSA was groundless and was brought in bad faith.

{¶54} The third assignment of error is overruled.

*Fourth Assignment of Error*

{¶55} In the fourth assignment of error, Stephens argues that the amount of the judgment for attorney fees awarded to Lunar Lagoons by the trial court pursuant to R.C. 1345.09(F) was unreasonable and therefore erroneous on that basis.

{¶56} With respect to this claim, the record reflects that on October 22, 2024, the trial court held an evidentiary hearing on the issue of attorney fees. At that hearing, Lunar Lagoons presented the testimony of one witness, and the parties stipulated to the admission of Plaintiff's Exhibit 1, which was a compilation of itemized invoices for the legal fees billed to Lunar Lagoons by its counsel in the case. Stephens presented no evidence.

{¶57} At the October 22, 2024 hearing, Lunar Lagoons called attorney Joseph Steven Justice ("Justice") to testify as an expert witness. Justice testified that he has been licensed to practice law in Ohio since 1994. After one year of employment as a judicial law clerk for the United States Sixth Circuit Court of Appeals, Justice worked for approximately 15 years with the large regional law firm of Taft Stettinius & Hollister, and then spent 14 years with a smaller law firm in Miami County, called Dungan & LeFevre. Justice testified that the majority of his

practice during his 30-year legal career had been in the area of litigation, specifically civil litigation of all types, including business disputes, breach of contract actions, employment disputes, and environmental lawsuits.

**{¶58}** Justice testified that he had reviewed the various pleadings and motions filed in the instant case, and had also reviewed Plaintiff's Exhibit 1. As a result, Justice testified that the hourly rates billed by Lunar Lagoons' counsel in the case were fair and reasonable, based on the experience of the various attorneys involved in the matter. Justice noted that the legal work on the case had initially been handled by one partner and a senior associate in the law firm representing Lunar Lagoons. Justice testified that after the case had been pending for about six months, the firm assigned a younger associate to work on the case, in an apparent decision to have much of the work done by a newer attorney with a lower hourly rate.

**{¶59}** Justice testified that, in assessing the reasonableness of the fees, he considered the hourly rates charged in light of the expertise of the attorneys, the distinguished reputation of the law firm, and the geographical region in which the case was filed. Justice testified that he would characterize the hourly rates charged in the case as "moderated", and stated that he was somewhat surprised that the legal fees charged were not higher. Justice also testified that, given the amount of time billed for the legal work done on the case, he felt that a reasonable and necessary amount of time was spent working on the case, noting that the case had been pending

for over a year. In summary, Justice testified that the $20,059.00 in attorney fees reflected in Plaintiff's Exhibit 1 amounted to a total of 82.8 hours spent on the case by counsel for Lunar Lagoons, or slightly more than two weeks' worth of work on a case that Justice would have expected to have actually required more time. Justice concluded his direct-examination testimony with his opinion that the legal fees charged were both reasonable and necessary with respect to the scope of the case.

{¶60} On cross-examination, Justice testified that the invoices were not specific enough to finely parse which fees were attributable to how much time was spent on which particular claim in the case. However, Justice noted that the Consumer Sales Practices Act counterclaim was asserted by Stephens relatively early in the case, in response to the complaint, which resulted in Lunar Lagoons' counsel needing to amend the complaint to assert a bad faith claim under that statute. Justice testified that, of the approximately $20,000.00 in total legal fees charged in the case, approximately $19,000.00 of those fees were incurred after the counterclaim was asserted by Stephens and the complaint was amended to allege a bad faith assertion on the defendant's part.

{¶61} On November 25, 2024, the trial court filed its judgment entry finding that, pursuant to R.C. 1345.09(F)(1), Lunar Lagoons was entitled to recover its reasonable attorney fees relating to Stephens' counterclaim. The trial court therefore ordered that Stephens pay attorney fees to the company in the amount of $18,220.00, representing the attorney fees incurred by Lunar Lagoons since October 24, 2023,

the date on which Stephens filed his counterclaim raising the CSPA claims. In formulating the award of attorney fees in that amount, the trial court stated as follows:

> After researching previous cases on the issue of apportioning attorney fees to time spent on 1345.09 F1 issues, it is nearly impossible to break down the fees in this manner, they are too intertwined. Furthermore, there was no testimony as to the breakdown of the Plaintiff's bill with regard to such. The Court finds it reasonable to use the date the Counterclaim was filed by Defendant, October 24, 2023. That is the date when Defendant first alleged (in the pleadings) a groundless violation of the CSPA. Defendant is ordered to pay to Plaintiff the attorney fees set forth on Plaintiff's Exhibit 1, starting on October 24, 2023 through the end of the last entry on the bill August 8, 2024, in the amount of $18,220.00.

(Docket No. 36).

{¶62} On appeal, Stephens does not challenge the reasonableness of the attorney fees awarded with regard to the hourly rates or the overall hours billed by Lunar Lagoons' counsel on the case. Rather, Stephens argues that the trial court's award of attorney fees was erroneous in that it failed to specifically apportion and award only the attorney fees relating to the work performed on the CSPA counterclaim.

{¶63} With regard to appellate review of the amount of attorney fees awarded under R.C. 1345.09(F), this Court stated as follows in *Semco, Inc. v. Sims Bros.*, 2013-Ohio-4109 (3d Dist.):

> R.C. 1345.09(F) provides that a trial court "may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed." As with the decision of whether to award

-28-

attorney fees, "the amount any such award pursuant to R.C. 1345.09(F) [is] left to the trial court's discretion." *Mansour v. Vulcan Waterproofing, Inc.,* 12th Dist. Butler No. CA99–09–150, 2000 WL 783069, \*4 (June 19, 2000). *See also White v. Lima Auto Mall, Inc.,* 3d Dist. Allen No. 1–08–63, 2009–Ohio–411, ¶ 15. "Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere." *White* at ¶ 15, citing *Brooks v. Hurst Buick–Pontiac–Olds–GMC, Inc.,* 23 Ohio App.3d 85, 91 (12th Dist.1985). A trial court judge has "an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court." *White* at ¶ 16, citing *Brooks,* 23 Ohio App.3d at 91. *See also Mike Castrucci Ford Sales, Inc. v. Hoover,* 12th Dist. Clermont No. CA2009-03-016, 2009-Ohio-4823, ¶ 11.

*Id.,* at ¶ 50.

**{¶64}** Moreover, as the First District Court of Appeals noted in *Bryant v. Walt Sweeney Automotive, Inc.*, 2002-Ohio-2577 (1st Dist.):

The Ohio Supreme Court has held that where claims can be separated so that there is one under the CSPA, for which attorney fees may be awarded, and others for which no fees are recoverable, the trial court must only award fees for the time spent pursuing the CSPA claim [citing *Bittner v. Tri County Toyota, Inc.*, 58 Ohio St.3d 143, 145 (1991)]. But this court, following *Hensley v. Eckerhart* [461 U.S. 424 (1983)] has held that when it is not possible to divide claims in this fashion, such as when claims not covered under the CSPA involve a common core of facts with claims arising under the CSPA, then the court may award attorney fees for all time reasonably spent pursuing all claims.

*Id.,* at ¶ 35.

**{¶65}** Similarly, the Eighth District Court of Appeals has held that "'fees may be awarded for claims related to the violation of the Consumer Sales Practices Act, when they are not easily separated.'" *Shury v. Cusato*, 2022-Ohio-4401, ¶ 71

(8th Dist.), quoting *Gonzalez v. Spofford*, 2005-Ohio-3415, ¶ 39 (8th Dist.), citing *Fit 'N' Fun Pools, Inc. v. Shelly*, 2001 WL 10851 (9th Dist. Jan. 3, 2001); *Bryant v. Walt Sweeney Automotive, Inc.*, 2002-Ohio-2577 (1st Dist.); *Parker v. I&F Insulation Co.*, 1998 WL 144510 (1st Dist. Mar. 27, 1998); *Budner v. Lake Erie Homes*, 2001-Ohio-4288 (11th Dist.); *Luft v. Perry Cty. Lumber & Supply Co.,* 2003-Ohio-2305 (10th Dist.). "'[T]he inability of a prevailing party to allocate attorney fees for discrete claims does not necessarily render a fee award for the full amount unreasonable.'" *Shury*, at ¶ 70, quoting *Edlong Corp. v. Nadathur*, 2013-Ohio-1283, ¶ 17 (1st Dist.).

{¶66} In the instant case, upon applying the above-cited legal authority to the facts before us, including but not limited to the evidence adduced at the October 22, 2024 hearing on attorney fees, and because the claims in the case involved an interwoven and common core of facts and legal issues following the filing of Stephens' CSPA-based counterclaim, we conclude that the trial court did not abuse its discretion in the amount of attorney fees awarded to Lunar Lagoons.

{¶67} The fourth assignment of error is overruled.

*Conclusion*

{¶68} Having found no error in the particulars assigned and argued in the first, third, and fourth assignments of error, but having found error prejudicial to the defendant-appellant in the second assignment of error, the trial court's judgments

Case No. 10-24-11

are affirmed in part and reversed in part. This matter is remanded to the trial court

for further proceedings consistent with this decision.

***Judgments affirmed in part,
reversed in part, and cause
remanded***

**ZIMMERMAN and WILLAMOWSKI, J.J., concur.**

# <u>JUDGMENT ENTRY</u>

For the reasons stated in the opinion of this Court, it is the judgment and order of this Court that the judgments of the trial court are affirmed in part and reversed in part with costs assessed equally between Appellants and Appellees for which judgment is hereby rendered. The cause is hereby remanded to the trial court for further proceedings and for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

Juergen A. Waldick, Judge

William R. Zimmerman, Judge

John R. Willamowski, Judge

DATED:
/jlm